Harry C. BATCHELDER, Jr., Individually and Derivatively On Behalf of Honda Motor Company, Ltd. and American Honda Motor Company, Inc., Plaintiff–Appellant,

v.

Nobuhiko KAWAMOTO, Yoshihide Munekuni, Hiroyuki Yoshino, Nobuyki Miyata, Koichi Amemiya, Masaki Iwai, Hiroyuki Shimojima, Takashi Matsuda, Koji Nagata, Takeshi Yamada, Tomohiko Nakano, Makoto Shino, Riku Iwai, Yoshino Okawara, Kazuo Ibuki, Tadashi Kume, Takeo Fukui, Ryuichi Tsukamoto, Katsuro Suzuki, Michiaki Shinkai, Michiyoshi Hagino, Shinya Iwakura, Isao Suzuki, Kazue Ito, Kunhiro Chujo, Kentaro Kato, Kaname Kasai, Kensuke Fukatsu, Takeo Matsumoto, Hirotada Komatsu, Yuji Sakasume, Motoatsu Shiraishi, Minoru Harada, Satoshi Aoko, Atsuyoshi Hyogo, Dennis Josleyn, Stanley James Cardiges, Gary D. Josleyn, David Pedersen, Roger Novelly, Robert A. Massitelli, Frederick W. Meis, Jr., Edward A. Temple, Thomas A. Caufield,

Frank Pisano, Beatrice Sikora, James Short, John W. Billmyer, Lyon & Lyon, and Roland NMI Smoot, Defendants–Appellees.

No. 96–56565.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 7, 1998.

Decided June 15, 1998.

As Amended July 15, 1998.

Henry H. Rossbacher (argued), James S. Cahill, Rossbacher & Associates, Los Angeles, CA, William A. Lerach, Spencer A. Burkholz, Milberg, Weiss, Bershad, Hynes & Lerach LLP, San Diego, CA, Kevin P. Roddy, Los Angeles, CA, Jonathan W. Cuneo, The Cuneo Law Group, Washington, DC, for plaintiff-appellant Harry C. Batchelder, Jr.

Kent L. Richland (argued), Robin Meadow, Alan Diamond, Greines, Martin, Stein & Richland LLP, Beverly Hills, CA, for defendants-appellees Takeshi Yamada, Takeo Fukui, Koichi Amemiya, and Isao Suzuki.

Sarah Chapin Columbia (argued), Jeremiah T. O'Sullivan, Choate, Hall & Stewart, Boston, MA, J. Michael Hennigan, Robert Palmer, Pamala J. King, Hennigan, Mercer & Bennett, Los Angeles, CA, for defendants Lyon & Lyon and Roland Smoot.

Richard A. Cirillo, Herbert S. Washer, Rogers & Wells, New York City, Allan E. Ceran, Rogers & Wells, Los Angeles, CA, Dan Kiefer, Mark Brooks, Honda North America, Torrance CA, for American Honda Motor, Co., Inc.

Before: FARRIS, O'SCANNLAIN, and FERNANDEZ, Circuit Judges.

O'SCANNLAIN, Circuit Judge:

We must decide whether the holder of an American Depository Receipt has standing to bring a shareholder derivative action against a Japanese corporation.

I

This is a derivative action brought by Harry C. Batchelder, Jr. on behalf of Honda Motor Company, Ltd. ("Honda Japan") and American Honda Motor Company, Inc. ("American Honda") for wrongs allegedly committed by directors, officers, and employees of Honda Japan and American Honda (the "Director Defendants"), and by certain third parties, including Lyon & Lyon and Roland Smoot (collectively, "Lyon & Lyon"). Honda Japan was incorporated under the laws of Japan. It is the sole shareholder of American Honda, a California corporation.

Harry C. Batchelder, Jr. alleges that at all times relevant to this case he owned 1,246 American Depository Receipts ("ADRs"),

each of which reflects ownership of ten shares of stock in Honda Japan. The ADRs are issued by the depository, Morgan Guaranty Trust Company of New York. Batchelder purchased his ADRs under the terms and conditions of a deposit agreement ("Deposit Agreement") with Honda Japan and Morgan Guaranty. Batchelder alleges that the directors of both Honda Japan and American Honda breached their fiduciary duties by failing adequately to protect the companies from harm caused by the actions of certain American Honda employees who were involved in a bribery and kickback scheme. Batchelder also purports to bring suit against the law firm of Lyon & Lyon, American Honda's former general counsel, and two of its partners, Roland Smoot and James Short, who, Batchelder claims, assisted in "covering up" the fraudulent scheme. Batchelder has asserted "shareholder" derivative claims for breach of duty, waste of corporate assets, abuse of control, constructive fraud, mismanagement, and dissemination of false and misleading proxy statements in violation of 15 U.S.C. § 78n(a).

Following the Director Defendants' motion to dismiss, the district court entered a scheduling order staying all discovery in the case pending its resolution. Thereafter, American Honda and Lyon & Lyon also filed motions to dismiss on numerous grounds. Following a hearing, the district court dismissed Batchelder's complaint with prejudice. The district court ruled that Batchelder's complaint failed as a matter of law because, *inter alia*: (1) based on the Deposit Agreement, Batchelder's standing to bring a derivative action must be determined under Japanese law; (2) under Japanese law, Batchelder is not a shareholder and therefore lacks standing to bring a derivative action on behalf of Honda Japan; and (3) even if Batchelder could assert the rights of a shareholder of Honda Japan, his action would still fail as against American Honda and Lyon & Lyon because Japanese law recognizes neither

"double derivative"[1] actions nor actions against third parties.

Batchelder timely appealed.

## II

Batchelder maintains that the district court erred in holding that he lacks standing to bring a shareholder derivative action on behalf of Honda Japan and American Honda. According to Batchelder, the district court erroneously held that his "standing and his right to bring a derivative action ... must be determined under Japanese law," and wrongly concluded that, as an owner of Honda Japan ADRs, he "is not a shareholder and lacks standing to bring a derivative action on behalf of Honda ... under governing Japanese law." Batchelder contends that whereas Japanese law provides the substantive law to adjudicate his claims against the Director Defendants, it does not control his standing to bring California and federal claims on behalf of Honda Japan and American Honda. According to Batchelder, the district court must perform "the requisite conflicts of law analysis" to determine what law governs his right to bring a derivative suit. Batchelder contends that either Fed.R.Civ.P. 23.1 ("Derivative Actions by Shareholders") or Cal. Corp.Code § 800 ("Shareholder Derivative Actions") provides the standing requirements for his claim, not Japanese law.

## A

Batchelder's right to bring derivative claims on behalf of Honda Japan and American Honda is indeed governed by Japanese law. Batchelder purchased his ADRs pursuant to the Deposit Agreement, which expressly provides that the law of Japan governs shareholder rights. Section 7.07 of the Deposit Agreement, entitled "Governing Law," states:

1. "A 'double derivative' suit has been defined as an action brought by a shareholder of a holding or parent company, on behalf of that corporation, to enforce a cause of action in favor of the subsidiary company. The shareholder is, in essence, maintaining a derivative action on behalf of the subsidiary, since the holding or parent company has derivative rights to the cause of action possessed by the subsidiary. The directors of both the parent and the subsidiary must refuse to enforce the cause of action." *Federal Deposit Insurance Corporation v. Alshuler (In re Imperial Corp. of America)*, 92 F.3d 1503, 1509 n. 10 (9th Cir.1996) (citation omitted).

This Deposit Agreement and the [American Depository] Receipts and all rights hereunder and thereunder and provisions hereof and thereof shall be governed by and construed in accordance with the laws of the State of New York, United States of America. It is understood that notwithstanding any present or future provision of the laws of the State of New York, *the rights of holders of Stock and other Deposited Securities, and the duties and obligations of the Company in respect of such holders, as such, shall be governed by the laws of Japan.*

(emphasis added). The first sentence of § 7.07 provides that contract rights contained in the Deposit Agreement itself or in the ADR certificates, as well as the construction of the Deposit Agreement, are to be governed by the laws of New York. The second sentence of § 7.07, however, explicitly provides that Japanese law governs shareholder rights and the rights of holders of other Deposited Securities, including ADRs. Thus, if an ADR holder seeks to assert a right belonging to shareholders or a right not specifically granted to ADR holders in the Deposit Agreement, the laws of Japan apply. Section 7.07 is simply a choice-of-law clause.

### 1

■ We analyze the validity of choice-of-law clauses under The *Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972), in which the Supreme Court stated that courts should enforce choice-of-law and choice-of-forum clauses in cases of "freely negotiated private international agreements." *Id.* at 12–13, 92 S.Ct. 1907; *see also Richards v. Lloyd's of London*, 135 F.3d 1289, 1293 (9th Cir.1998) (en banc). There is every reason to believe that the Depository Agreement was such an agreement. *See* American Depository Receipts, Securities Act of 1933, Exchange Act Release Nos. 33–6984, 34–29226 (May 23, 1991) ("[T]he deposit agreement constitutes the contract between the issuer of the deposited securities, the depository and the holders of ADRs. ADR holders are deemed to have agreed to all terms in the deposit agree-

ment by their acceptance and holding of ADRs."). Contractual choice-of-law clauses are routinely enforced, particularly when the country whose law is selected has some nexus with the action. *See Northrop Corp. v. Triad Int'l Marketing S.A.*, 811 F.2d 1265, 1270 (9th Cir.1987) ("[C]hoice-of-law and choice-of-forum provisions in international commercial contracts are 'an almost indispensable precondition to achievement of the orderliness and predictability essential to any international business transaction,' and should be enforced absent strong reasons to set them aside.") (quoting *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 516–20, 94 S.Ct. 2449, 41 L.Ed.2d 270 (1974)); *see also Marine Midland Bank, N.A. v. United Missouri Bank, N.A.*, 223 A.D.2d 119, 643 N.Y.S.2d 528, 530 (N.Y.App.Div.1996) ("As a general rule, choice of law provisions ... are valid and enforceable in this State.").[2] We analyze § 7.07 in light of these principles.

Batchelder has never contended that the Deposit Agreement itself grants ADR holders the right to bring shareholder derivative claims. He argues instead that he is entitled to bring derivative claims because he "is a Honda shareholder" through his ownership of ADRs. Because Batchelder is attempting to assert a right not expressly granted to him by the Deposit Agreement—the right to bring a derivative suit—the plain language of the second sentence of § 7.07 directs this court to apply Japanese law to determine the existence and scope of Batchelder's right. No conflicts-of-law analysis is required.

### 2

Incredibly, Batchelder completely failed to address the vital second sentence of § 7.07 in his opening brief before this court. He instead made only a brief reference to the first sentence of § 7.07 in a footnote and, even there, grossly misrepresented the meaning of the provision. Quoting selectively, Batchelder represented that "Section 7.07 of the Deposit Agreement states that 'all rights hereunder ... shall be governed by and construed in accordance with the laws of ...

**2.** As noted above, under the first sentence of § 7.07, the Deposit Agreement itself, including the choice-of-law clause, is governed by and construed according to New York law.

New York.' " From this snippet, one would think that New York law governs Batchelder's claim. Not so. In response to Lyon & Lyon's exposure of his attempt to mislead this court, Batchelder raises a number of arguments regarding § 7.07 for the first time in his reply brief.

### a

Batchelder first argues that *Richards v. Lloyd's of London,* 107 F.3d 1422 (9th Cir. 1997), renders § 7.07 void. In *Richards,* a 3–judge panel of this court held that forum-selection and choice-of-law clauses in an agreement between American external "Names" (which are similar to stockholders) and the British entity Lloyd's of London were invalid for purposes of the Names' claims under the Securities Act of 1933 and the Securities Exchange Act of 1934 because the clauses operated to effect waivers of compliance with the Acts. *Id.* at 1427. Batchelder maintains that the similarity between the clause held invalid in *Richards* and § 7.07 in the Deposit Agreement compels the conclusion that § 7.07 is void. We overruled *Richards* sitting en banc in *Richards,* 135 F.3d at 1294, however. The en banc court held that the antiwaiver provisions of the federal securities statutes do *not* void choice-of-forum and choice-of-law provisions calling for application of English law in international "general undertaking" agreements governing investment of American Names in Lloyd's of London syndicates—precisely the opposite of Batchelder's argument. *Id.* Consequently, Batchelder's argument on that score is meritless.

### b

▪ Batchelder also maintains in his reply brief that he was never given a copy of and never consented to § 7.07. Accordingly, he never agreed that "his rights and claims as an ADR holder could be decided only by a court sitting in Japan." Batchelder contends that " § 7.07 is nothing more than a secret forum selection clause ... designed to defeat the jurisdiction of all U.S. courts." This argument is without merit. First, as noted above, "ADR holders are deemed to have agreed to all terms in the deposit agreement

by their acceptance and holding of ADRs." American Depository Receipts, Securities Act of 1933, Exchange Act Release Nos. 33–6984, 34–29226 (May 23, 1991). Presumably, the words "all terms" do not mean "some terms" or "all terms except for choice-of-law terms." Second, "[t]he Supreme Court has noted that simply alleging that one was duped into signing the contract is not enough.... For a party to escape a forum selection clause on the grounds of fraud, it must show that 'the inclusion of that clause in the contract was the product of fraud or coercion.' " *Richards,* 135 F.3d at 1297. (quoting *Scherk,* 417 U.S. at 519 n. 14, 94 S.Ct. 2449). We see no reason to treat choice-of-law clauses any differently from forum-selection clauses. Because Batchelder has shown neither fraud nor coercion, he cannot avoid the effect of the Deposit Agreement's choice-of-law clause.

### c

▪ Batchelder further argues that § 7.07 is unreasonable and thus unenforceable under California law and public policy in that it prohibits him from bringing a double derivative claim on behalf of American Honda in California. Batchelder maintains that California law "recognizes important public policies underlying a derivative action ... when injury is caused to the corporation that may not otherwise be redressed because of the failure of the corporation to act." He claims that because Cal. Corp.Code § 800 applies to actions brought on behalf of "any domestic or foreign corporation," § 7.07 cannot be invoked to avoid the application of California law to his double derivative action. This argument lacks force. First, assuming California does recognize the importance of derivative suits, California's interest would not be defeated by the application of Japanese law to Batchelder's claim. He is plainly not without remedies; he can become a shareholder of Honda Japan at any time simply by exchanging his ADRs for shares of Honda Japan. The fact that Japanese law may differ in this regard from California law does not necessarily signify that application of Japanese law would contravene California's public policy. *See, e.g., General Signal Corp. v. MCI Telecommunications Corp.,* 66 F.3d

1500, 1506 (9th Cir.1995). Second, in making his claim that California law and public policy would be offended by the application of § 7.07 to bar his double derivative suit against American Honda, Batchelder glosses over the rather significant fact that California has never expressly recognized double derivative suits. Indeed, one decision even suggests that California would bar such suits. *See Gaillard v. Natomas Co.,* 173 Cal.App.3d 410, 419, 219 Cal.Rptr. 74 (1985) (suggesting no double derivative action in California because Cal. Corp.Code § 800 requires contemporaneous ownership of shares in corporation on behalf of which suit was brought). Consequently, we also reject this argument.

3

In sum, the parties chose to be governed by Japanese law in the Deposit Agreement. Batchelder has failed to provide any persuasive reason why this court should not honor that agreement. Consequently, the district court correctly determined that Batchelder's standing to bring a derivative suit is governed by Japanese law.

B

■ In any event, even if we were to ignore the Deposit Agreement's choice-of-law provision, ordinary conflicts-of-law principles would direct us to apply Japanese law to Batchelder's claim. Batchelder holds an interest in Honda Japan, not American Honda. Under the "internal affairs" doctrine, the rights of shareholders in a foreign company, including the right to sue derivatively, are determined by the law of the place where the company is incorporated. *See Hausman v. Buckley,* 299 F.2d 696, 702 (2d Cir.1962); *McDermott Inc. v. Lewis,* 531 A.2d 206, 214–17 (Del.1987); *Levine v. Milton,* 219 A.2d 145, 147 (Del.1966); *cf. CTS Corp. v. Dynamics Corp. of America,* 481 U.S. 69, 89, 107 S.Ct. 1637, 95 L.Ed.2d 67 (1987) ("This beneficial free market system depends at its core upon the fact that a corporation—except in the rarest situations—is organized under, and governed by, the law of a single jurisdiction, traditionally the corporate law of the State of incorporation."). The internal affairs doctrine is equally applicable to double derivative claims brought on behalf of an American subsidiary. *Cf. Kostolany v. Davis,* 1995 WL 662683, *1–3 (Del.Ch.1995) (applying Dutch law to determine a shareholder's right to bring double derivative claims because "plaintiff is a stockholder of the Dutch parent, not of the Delaware subsidiaries"). Consequently, Batchelder's prerogative to step into the shoes of the parent corporation as derivative plaintiff, or of the subsidiary as double derivative plaintiff, must be determined by the law of the place of incorporation of the company in which he holds an interest; in this case, that place is Japan.

Batchelder claims that the internal affairs doctrine should not apply to this case. He claims that the Delaware Supreme Court recognized in *Sternberg v. O'Neil,* 550 A.2d 1105 (Del.1988), that, in a double derivative action, the internal affairs doctrine mandates application of the law of the state of the parent's incorporation only to the internal affairs of the parent; the law of the state of incorporation of the subsidiary applies to the subsidiary's internal affairs. However, Batchelder overstates the effect of *Sternberg.* The issue before the *Sternberg* court was whether it had personal jurisdiction over an Ohio parent company in a double derivative suit against a Delaware subsidiary, "not choice of law." *Sternberg,* 550 A.2d at 1123. The court even noted that, if jurisdiction over the Ohio corporation was established in Delaware, "Delaware's well established conflict of laws principles require that the laws of the jurisdiction of incorporation govern internal corporate relationships.... However, *that choice of law concern should not 'complicate or distort the jurisdictional inquiry.'*" *Id.* (emphasis added) (citing *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 778, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984)).

Accordingly, even ignoring the parties' agreement and applying conflicts-of-law principles, we would still apply Japanese law to determine the existence and scope of Batchelder's derivative claims. The district court did not err in holding that Japanese law applies.

## III

Batchelder next argues that, even under Japanese law, he *is* a Honda Japan shareholder who is entitled to bring suit on behalf of the parent company *and* assert a double derivative claim on behalf of its subsidiary, American Honda. According to Batchelder, the district court "ignored the fact that ADRs are the equivalent of shares of a foreign corporation and ADR holders are equivalent to a shareholder [sic] of that corporation, whether under Japanese law or U.S. law." Batchelder further maintains that the district court erred in finding that he failed properly to assert "double derivative" claims on behalf of Honda Japan and American Honda. He contends that the district court also "ignore[d] the fact that California substantive law applies to derivative claims asserted by Batchelder on behalf of American Honda" as well as "numerous precedents recognizing the validity of 'double derivative' claims under these circumstances."

■ Article 267 of the Japanese Commercial Code, which establishes the derivative remedy, states:

1. Any shareholder who has held a share continuously for the last six months may demand, in writing, that the stock company institute an action to enforce the liability of directors.

2. If the stock company has failed to institute such action within thirty days from the date on which the demand referred to in the preceding paragraph was made, the shareholder referred to in the preceding paragraph may institute such action on behalf of the company.

Shoho (Commercial Code), Law No. 48 of 1899 [Shoho] Art. 267. Notwithstanding his concessions that he holds ADRs, not shares, in Honda Japan, and that Article 267 confers derivative standing only on "any shareholder," Batchelder claims, that as an ADR holder, he is "equivalent to a shareholder" and should have been permitted to proceed with his derivative suit. The weight of authority, however, is against him.

Honda's Japanese law experts testified that only shareholders appearing on Honda Japan's shareholders' register may institute a derivative action under Article 267(1). "ADR holders are not shareholders of record" under Japanese law and therefore "are not allowed to make the demand and then institute a derivative action." (Kitazawa Decl.). According to one of Honda's experts, Professor Kitazawa, "[t]he law on this point is undisputed; I know of no case or scholarly opinion that argues otherwise." *Id.* Another of Honda's experts stated unequivocally that "Under Japanese law, a holder of [ADRs] would not be considered under Japanese law to be a registered shareholder and, therefore, would have no right or power to make the requisite pre-suit demand or to initiate the instant derivative litigation." (Henderson Decl.).

Batchelder has submitted no authority to compel a different conclusion. While he maintains that "the opinions of Japanese legal experts cast the district court's conclusory opinion into considerable doubt" and that the "applicable foreign law was arguably unclear," the testimony of his experts supports no such conclusion. Indeed, one of his "practicing-attorney-experts" frankly admitted that:

When there exists ... a pro forma shareholder and a de facto shareholder [an ADR holder], the question arises as to which shareholder corresponds to the shareholder referred to in [Article 267(1) ]. As far as I know, no court in Japan has ever ruled on this issue. Therefore, *it is impossible to say whether an ADR possessor, without being registered on the shareholder registry, has standing to bring an action. It remains to be seen how the courts in Japan would rule on this question.*

(Sakata Decl.) (emphasis added). Another Batchelder expert conceded that:

Article 267 establishes the qualification of a plaintiff as a shareholder who has a share(s) for six months. However, a prevailing view of commentators is that such shareholder shall be a 'registered shareholder' on the book of the company for six months.... There is no court case on this point, *presumably because all plaintiffs to date in shareholder derivative actions were shareholders of record.* ... [W]e are unable to locate any court case or specific

discussions by commentators *except for a mere conclusion that the prevailing view is that a plaintiff-shareholder shall be a shareholder of record.*

(Hirakawa Decl.) (emphasis added). It is noteworthy that Batchelder's Japanese law scholar did not opine on this subject.

In light of the foregoing, the district court correctly found that Batchelder lacked standing as an ADR holder under Japanese law to bring his shareholder derivative action on behalf of Honda Japan.[3]

## IV

■ Finally, Batchelder claims that the district court erred by dismissing his proxy claim brought under § 14 of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78n(a), on the ground that Honda's securities were exempt under the Exchange Act. The district court held that Batchelder's "claim under the federal proxy laws fails because [Honda] is a 'foreign private issuer' under rules promulgated by the [Securities and Exchange Commission], and [Honda] securities are thereby exempt from the requirements of section 14(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78n(a),[4] and Rule 14a–9, 17 C.F.R. § 240.14a–9." [5] Batchelder maintains that this decision was error because, even if Honda Japan was exempt from filing proxy materials with the Securities and Exchange Commission ("SEC"), the Director Defendants are nonetheless alleged to have disseminated false and misleading proxy materials to holders of Honda Japan common stock and ADRs in an effort to solicit proxies for votes at the June 29, 1995 general meeting of shareholders. Batchelder claims that having voluntarily distributed proxy materials, Honda was bound to make true and complete disclosures about the qualifications of each director presented for reelection.

In support of this proposition, Batchelder relies upon *Wilson v. Great American Industries,* 979 F.2d 924 (2d Cir.1992). In *Wilson,* the defendant company held enough shares to approve a proposed merger by a supermajority vote and therefore had no need to solicit proxies or send proxy materials to complete the transaction. However, the defendant nevertheless proceeded to disseminate proxy materials. The Second Circuit held that the proxy materials had to comply with § 14(a), even though the defendant could have permissibly voted its own shares to consummate the transaction without ever soliciting proxies. *See id.* at 931–32. The fact that the solicitation was unnecessary did not excuse the defendant from compliance with the proxy statute or the proxy rules. *See id.* The court held that "[e]ven though the proxy was not legally required in this case, when defendants choose to issue a proxy plaintiffs have a right to a truthful one." *Id.* Likewise, Batchelder argues, Honda Japan was required to provide a truthful proxy when it promised to send or to make available materials concerning shareholder meetings to its ADR holders in § 5.06 of the Deposit Agreement and in its 1977 Listing Application to the New York Stock Exchange.

*Wilson* is distinguishable from the current case, however, because, in *Wilson,* the defendant company was subject to § 14(a). Here, Honda Japan is exempt under Rule 3a12–3(b), which exempts foreign private issuers

---

3. Because Batchelder is not a registered shareholder under Japanese law entitled to bring a derivative suit on behalf of Honda Japan, we need not reach his claim that he was entitled to bring a double derivative suit on behalf of American Honda. Likewise, we need not reach the *forum non conveniens* issue or the claim that the district court erred in dismissing the action on grounds of Japan's exclusive jurisdiction and international comity.

4. Section 14(a) states that it is unlawful to solicit proxies in contravention of "such rules and regulations as the [Securities and Exchange Commis-

sion] may prescribe as necessary or appropriate in the public interest or for the protection of investors." 15 U.S.C. § 78n(a).

5. Rule 14a–9, the rule at issue in this case, provides, in pertinent part, that "[n]o solicitation subject to this regulation shall be made by means of any proxy statement . . . which, at the time . . . it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a–9.

from the provisions of § 14(a).[6] Batchelder has failed to put forth any argument as to why Honda Japan should not be considered a "foreign private issuer" under Rule 3b–4(c). Instead, he claims that once a company holds itself out to shareholders as required to file and send out proxy statements pursuant to § 14(a), it loses the Rule 3a12–3(b) exemption. Batchelder maintains that Honda Japan so held itself out in § 5.06 of the Deposit Agreement and in its 1977 Listing Application. True or not, this does not help Batchelder's case. The plain language of Rule 3a12–3(b) contains no such qualification. Rule 3a12–3(b) is clear with regard to Honda Japan's obligations under § 14(a) of the Exchange Act and the rules promulgated thereunder—it has none. Consequently, we hold that the district court properly dismissed Batchelder's § 14(a) claim.

**V**

For the foregoing reasons, we conclude that the district court did not err in holding that Batchelder, as an ADR holder, lacks standing to bring a shareholder derivative suit on behalf of Honda Japan. We also hold that the district court did not err in dismissing Batchelder's proxy claims brought under § 14 of the Securities Exchange Act of 1934, 15 U.S.C. § 78n(a). The district court's dismissal of Batchelder's action is therefore

**AFFIRMED.**

6. Rule 3a12–3(b) provides that: "Securities registered by a foreign private issuer, as defined in Rule 3b–4 (§ 240.3b–4 of this chapter) shall be exempt from section 14(a), 14(b), 14(c), 14(f) and 16 of the Act." 17 C.F.R. § 240.3a12–3(b).

The term "foreign private issuer" means any foreign issuer other than a foreign government except an issuer meeting the following conditions:

(1) More than 50 percent of the outstanding voting securities of such issuer are held of record either directly or through voting trust certificates or depository receipts by residents of the United States; and

(2) Any of the following:

(i) The majority of the executive officers or directors are United States citizens or residents,

(ii) More than 50 percent of the assets of the issuer are located in the United States, or

(iii) The business of the issuer is administered principally in the United States. For the purpose of this paragraph, the term "resident," as applied to security holders, shall mean any person whose address is on the records of the issuer, the voting trustee, or the depository as being located in the United States. 17 C.F.R. § 240.3b–4.