Kaplan, Mitchell H., J.
This case is again before the court on the Dutchess Defendants’[1] motion to dismiss the derivative claims asserted against them by the Cannonball Plaintiffs[2] for lack of subject matter jurisdiction. The Dutchess Defendants argue that, under Cayman law, the Cannonball Plaintiffs lack standing to assert derivative claims against them on behalf of Dutchess Private Equities Cayman Fund Ltd. (Dutchess Ltd.), a corporation organized under the laws of the Cayman Islands. Interestingly, this is the second Mass.R.Civ.P. 12(b)(1) motion that the Dutchess Defendants have filed in this action based on their contention that the Cannonball Plaintiffs do not have standing to assert these derivative claims and, therefore, the Superior Court is without jurisdiction over them.
The first Rule 12(b)(1) motion was filed some five years ago. In that motion, the Dutchess Defendants argued that the complaint did not sufficiently allege that (i) DCM obtained a benefit from the defendants’ alleged wrongdoing, and (ii) Novielli, Smith, and Leigh-ton had control over Dutchess Ltd. to meet the requirements of Cayman law for the assertion of derivative claims. The Dutchess Defendants’ arguments were rejected by the Appeals Court: “Because both control and benefit are sufficiently alleged, the plaintiffs have established derivative standing to sue DCM, Novielli, Smith, and Leighton on behalf of Dutchess Ltd. under Cayman law.” See Cannonball Fund, Ltd. v. Dutchess Capital Mgmt., LLC, 84 Mass.App.Ct. 75, 94 (2013) (Cannonball). In this first subject matter jurisdiction motion no mention was made of the argument on which the instant motion is premised: the Cannonball Plaintiffs are not registered owners of shares in Dutchess Ltd.
Here, the Dutchess Defendants point out that ABN Amro Global Custody Services N.V. (Custody Services), formerly Fortis Bank (Nederland) N.V., is the registered owner of the Cannonball Plaintiffs’ shares; they are only the beneficial owners. This, of course, is a fact that the Dutchess Defendants have known since these shares were purchased. The Dutchess Defendants, nonetheless, now argue that under “settled” Cayman law, only the registered owner of shares in a Cayman corporation may bring a derivative action. In consequence, they contend, the court does not have subject matter jurisdiction of this claim.
The Cannonball Plaintiffs, justifiably exorcised by this second subject matter jurisdiction motion filed after years of pretrial litigation, argue that the Dutchess Defendants’ have waived their right to take a second bite of the Rule 12(b)(1) motion to dismiss apple. Although their argument certainly has surface appeal, “standing is an issue of subject matter jurisdiction.” See Indeck Maine Energy, LLC v. Comm’r of Energy Res., 454 Mass. 511, 516 (2009). Further, “a jurisdictional issue must be decided, regardless of the point at which it is first raised . . . Subject matter jurisdiction cannot be conferred by consent, conduct or waiver . . . Accordingly, [a] court must take note of lack of jurisdiction whenever it appears, whether by suggestion of a party or otherwise.” Litton Bus. Sys., Inc. v. Comm'r of Revenue, 383 Mass. 619, 622 (1981) (internal citations omitted). The court will therefore take note of the jurisdictional issue, although raised in a grossly untimely manner, and address its merits.
FACTUAL BACKGROUND
The “facts” necessary to decide this motion are nearly all set out in Cannonball and the myriad other Superior Court decisions generated by this litigation and need not be restated. The only additional factual matters requiring attention are the efforts made by the Cannonball Plaintiffs to cure the problem raised by the undisputed fact that they are not (or were not) the record owners of their Dutchess Ltd. shares. In response to the Dutchess Defendants’ motion the plaintiffs have taken two steps. First, they contacted Custody Services to arrange to have it transfer direct ownership of the shares to them. According to the Cannonball Plaintiffs, Custody Services is willing to assign the shares to them; indeed, this may have already occurred. For the purposes of this motion, the court assumes that this transaction has been completed. The Cannonball Plaintiffs also have attempted to find a Dutchess Ltd. shareholder who is the registered owner of shares it owns beneficially and willing to serve as a derivative plaintiff in this case. The last filing from the Cannonball Plaintiffs reported that they had not yet located such a plaintiff. The court will assume that no such additional plaintiff has or will step forward (although, if one did, this motion would be moot).
In response to the transfer of legal ownership of the shares from Custody Services to the Cannonball Plaintiffs, the Dutchess Defendants direct the court to Article 12.5 of Dutchess Ltd.’s Articles of Association which states:
The Board may in its absolute discretion and without assigning any reason therefore refuse to register the transfer of a share. If the Board refuses to register a transfer of any share the Secretary shall, within three months after the date on which the transfer was lodged with the Company, send to the transferor and transferee notice of the refusal.
They then state that the Board, which is controlled by defendants Novielli and Leighton, has exercised this authority to refuse to allow the shares to be registered in the name of the Cannonball Plaintiffs and will continue to refuse to register them. The Dutchess Defendants have stated that the reason that the Board’s action is justified is because the “Board will not perpetuate this frivolous lawsuit, which has al *628 ready drained hundreds of thousands of dollars of Dutchess Ltd.’s assets . . .”
DISCUSSION
As stated in Cannonball: “Because Dutchess Ltd. is a Cayman Islands corporation, Cayman law determines whether the plaintiffs have standing to bring a claim derivatively on its behalf.” 84 Mass.App.Ct. at 93.[3] Further, “Cayman law is the common law of Britain and other Commonwealth countries, supplemented by Cayman Islands court decisions and statutes.” Id. at n.35. There does not appear to be a dispute that two Cayman Island appellate court decisions state that a beneficial owner of shares held in trust by another party does not have standing to bring a derivative action on the company’s behalf. See Schultz v. [1992-93] CILR 59, at 69; Svanstrom v. Jonasson [1997] CILR 192. Indeed, in Svanstrom, the three justices that issued written opinions were emphatic in dispelling any misconception that the decision in Schultz might have suggested that circumstances could exist in which a beneficial owner of shares in a Cayman Island corporation could bring a derivative action on behalf of that corporation by naming the registered owner of the shares as an additional defendant. The Svanstrom court pointed out that any inequities that might result from the inability of the beneficial owner of shares to bring an action could have been resolved with appropriate language in the instrument creating the trust that directed the trustee as to the actions that he must take under these circumstances. The justices deemed the principle that “companies are under no obligation to recognize any trust which may exist in relation to its shares,” to be the principle of law of paramount importance and that it would be impaired if beneficial owners of shares could sue on behalf of the company.
The Dutchess Defendants also argue that the Cayman Island courts have been clear in holding that only a court in the Cayman Island may order the Board of a Cayman Island corporation to register shares. There is a provision in the Cayman Islands Companies Law (now section 46, but previously section 45) that permits a person aggrieved by a Board’s refusal to register shares to “by motion to the Court, apply for an order that the register be rectified.” Referring to that section, a Cayman court has explicitly stated that: “There is only one place where issues regarding the perfecting of title to shares by rectification of the register can be dealt with and that is before the Grand Court of the Cayman Islands.” Canada, Inc. v. Socia International Ltd., [1998] CILR 256, 263. In that case, the Cayman court specifically held that an order of a foreign, in that case Canadian, court could not affect the registration of shares.
In response to this proposition, the Cannonball Plaintiffs make two substantial arguments.[4] First, they argue that since Schultz and Svanstrom were decided, two Commonwealth courts, one in the United Kingdom, more specifically Wales (Mohammad Jafari-Fini v. Skilglass Ltd., [2004] EWHC 3353 (Ch)), and one in Australia (Zabusky & Ors v. Virgtel Ltd. & Ors [2012] QCA 107), have held that rigid application of the rule announced in Schultz is not in keeping with rationale underlying the seminal decision, Foss v. Harbottle, 67 Eng. Rep. 189 (Ch. 1843), in which the British High Court first announced the doctrine that derivative suits may be brought by minority shareholders when the alleged wrongdoers commit a “fraud” on the minority. In Skillglass Ltd., the court stated:
In exceptional circumstances, where the alleged wrongdoer exercising control is also allegedly wrongly conducting himself against the beneficial owner of the shares, to deny the beneficial owner the standing to bring a derivative action, may frustrate at least the efficient and expeditious bringing of the company’s grievance to court.
This comment seems particularly applicable to the current situation in which Novielli and Leighton have stated that they will use their control over Dutchess Ltd. to deny the Cannonball Plaintiffs the opportunity to become the registered shareholders of the shares that they beneficially own, an act which would cure the jurisdictional issue and allow the case to be adjudicated on its merits. See Stena BV v. Sea Containers Ltd., [1989] 39 WIR 83 (where the court permitted a derivative claim to proceed to trial when the plaintiff, who had been only the beneficial owner of shares, also became the registered owner during the pendency of the case).
The Cannonball Plaintiffs also argue that there is no case in which a Cayman Islands court has held that the putative defendants in a derivative action could use their control of the board of the corporation to refuse to register shares beneficially owned by the minorily shareholders who have asserted claims that these defendants have committed a fraud upon them. In fact, the Cannonball Plaintiffs point out, the situation with which they are now faced—the defendants’ decision to raise this standing issue five years into the litigation—could not arise in a Cayman court. The experts on Cayman law proffered by both parties agree that under Cayman procedure the issue of whether a plaintiff has standing to assert a derivative claim is decided at the outset of such a case at the “permission to proceed” stage of the litigation in which standing is decided before the merits of a derivative claim can be litigated. The Cannonball Plaintiffs argue that if this issue had been raised by the Dutchess Defendants in their first Rule 12(b)(1) motion, it could have been addressed years ago.
With these positions in mind, the court turns to the question of whether under Cayman law, a beneficial owner of shares in a Cayman Island court would, today, be found to have standing to prosecute a derivative claim. In Carson v. Nat’l Bank of Commerce Trust and Sav., 501 F.2d 1082, 1082-86 (8th Cir. 1974), the *629 Eighth Circuit Court of Appeals addressed the issue of whether Nebraska would recognize a cause of action for violation of a right of privacy. The plaintiff argued that a majority of states had done so and it had been some time since the Supreme Court of Nebraska had considered the question. The Court however reasoned, “we believe that the best method of ascertaining what the Nebraska court would do with this case is to examine what it has done with similar cases in the past.” Id. at 1085. The Eighth Circuit then held that the strongly expressed positions in earlier cases suggested that the Supreme Court of Nebraska would not depart from precedent. In the present case, this court is struck by emphatic pronouncements in Svcmstrom of all three justices rendering opinions that only a registered shareholder had standing to bring a derivative suit. The justices all focused on the importance of the principle of Cayman law that companies do not have to acknowledge ownership of their shares by anyone other than the registered owner, presumably the owner with legal title, even if only a nominee. In consequence, the court cannot conclude that contrary rulings by courts in Wales and Australia that the holding of Svanstrom was wrong would be persuasive to a Cayman Islands court. Indeed, in Tomran, Inc. v. Passano, 891 A.2d 336, 348 (Md. 2006), the Maryland Court of Appeals, confronting this same issue, held that it could not “conclude that Irish courts would grant beneficial owners the right to sue derivatively on behalf of corporations.” See also Batchelder v. Kawamoto, 147 F.3d 915, 921-22 (9th Cir. 1998) (a similar holding involving the law of Japan).
The court also cannot conclude, assuming that Custody Services has transferred ownership of the shares to the Cannonball Plaintiffs, that it has the authority to order the Dutchess Defendants to register the shares in the Cannonball Plaintiffs’ names. Indeed, there is a cart before the horse issue here. If the court does not have subject matter jurisdiction over the claims asserted against the Dutchess Defendants, it cannot enter an order directing them to take some action that will then confer the court with jurisdiction over them.
The court is not pleased by the posture of this case or its apparent inability to itself resolve this jurisdictional issue. Were it empowered to do so, it would have no problem finding that it was an abuse of discretion for the defendant Board members to decide for themselves that the claims brought against them individually are “frivolous” and, therefore, that it is in Dutchess Ltd.’s best interest that they refuse to register the shares in order to prevent those claims from being decided on the merits. That is a far cry from the independent review by disinterested parties of the value of a derivative claim that can result in its dismissal when brought on behalf of a Massachusetts corporation under G.L.c. 156D, §7.44.[5]
However, the Cayman Islands Companies Law (2013 Revision) provides for a proceeding under section 46 to rectify the register. It was described in Canada, Inc. v. Soda International Ltd., supra, as a summary proceeding. In a footnote to their motion, the Dutchess Defendants suggest that the Cannonball Plaintiffs would be unlikely to succeed in a proceeding to rectify the registry, and cite a decision from an English Court of Appeal in support of their suggestion. See Re Smith & Fawcett Ltd., [1942] 1 All ER 542, 543. Having read that decision and considered it in the circumstances of this case, including the timing of the Dutchess Defendants’ second standing motion, the court is not persuaded that it supports their contention.[6] In any event, the court will stay entry of a judgment dismissing the derivative claims for a reasonable period in which the Cannonball Plaintiffs may pursue a motion under Section 46 of the Cayman Islands Companies Law before the Grand Court of the Cayman Islands. As noted above, registration of shares in a Cayman Island company before the case is decided on the merits has been held to cure the jurisdictional problem. See Stena BV, supra.
ORDER
For the foregoing reasons, the Dutchess Defendants’ motion to dismiss for lack of subject matter jurisdiction is provisionally allowed. Within thirty days of this Order, the Cannonball Plaintiffs shall report to the court on whether they (i) will be filing a motion to rectify the register in the Cayman Islands and, if so, their best estimate as to when that proceeding might be completed, or (ii) will not be filing such a motion, in which case an order dismissing these derivative claims will enter. If the first option is selected, a final order on this motion will await the outcome of the Cayman Islands proceeding. If the second option is selected, having in mind that not all claims against all parties will have been resolved by this order, the court will hear the parties on whether a separate and final judgment as to the derivative claims should enter permitting the Cannonball Plaintiffs the opportunity to appeal this decision without further delay.

 Dutchess Capital Management, LLC (DCM), Dutchess Advisors, LLC (Dutchess Advisors), Michael Novielli, Douglas Leighton, and Theodore Smith.

 Cannonball Fund Ltd. and Cannonball Plus Fund Ltd.

 Unlike Cayman law, Massachusetts law permits a beneficial holder of shares to bring a derivative action when the person with legal tide has failed to act. See Demoulas v. Demoulas Supermarkets, Inc., 424 Mass. 501, 516-17 (1997).

 They make other arguments that the court does not believe are necessary to address.

 Of course, Dutchess Ltd. is not a Massachusetts corporation nor a corporation organized under the law of any other of the United States. When sophisticated investors elect to invest in offshore funds, for their own strategic reasons, they must understand that they are doing so without the protections afforded to investors by the state and federal laws applicable to domestic companies.

 It may be noted that the Dutchess Defendants have also filed a motion for summary judgment dismissing these derivative claims. Having found that it does not presently have subject matter jurisdiction to decide these claims, the court *630 cannot address the merits of the Dutchess Defendants’ motion. It Is perhaps ironic that If the court were to conclude that the summary judgment record establishes that there exist no material disputed questions of fact and the Dutchess Defendants are entitled to judgment dismissing the derivative claims as a matter of law, it might also agree that the Board of Dutchess Ltd. exercised its discretion in refusing to register the Canonball Plaintiffs’ shares in a “bona fide” manner. See Re Smith & Fawcett Ltd.., supra. On the other hand, were the court to conclude that summary judgment should not enter on the derivative claims, the Dutchess Defendants’ contention that these claims are “frivolous” would certainly be in doubt.