[643 NYS2d 528]

MARINE MIDLAND BANK, N. A., as Agent for Canadian Imperial Bank and Others, Appellant, v UNITED MISSOURI BANK, N. A., as Executor of JAMES D.H. REYNOLDS, Deceased, Respondent.

First Department, May 28, 1996

### APPEARANCES OF COUNSEL

*Bruce R. Ewing* of counsel (*Jonathan M. Herman* on the brief; *Townley & Updike*, attorneys), for appellant.

*R. Scott Garley* of counsel (*Felice L. Berkman* on the brief; *Grais & Phillips*, attorneys), for respondent.

### OPINION OF THE COURT

ELLERIN, J.

The issue before us is whether New York or Kansas law applies in this action against a deceased Kansas debtor's estate seeking recovery on a debt which accrued in New York under an agreement providing that New York law would govern in any action for its enforcement.

The underlying facts are essentially undisputed. On August 31, 1986, the decedent, James D.H. Reynolds, M.D., a Kansas resident, executed a negotiable promissory note together with a subscription agreement and security agreement for the purchase of an interest in a Connecticut limited partnership. The partnership was formed to acquire a Brentwood, Tennessee, shopping center and was sponsored by Integrated Resources, Inc. (Integrated), a corporation having its headquarters in New York. Decedent made a modest down payment at the time he purchased his interest and was thereafter required by the note to make quarterly installment payments over a six-year period to the partnership at Integrated's headquarters in New York.

The promissory note included terms accelerating the payment of principal and accrued interest upon a default in the payment schedule, requiring postdefault interest at the rate of 2% per month, binding decedent's legal representatives, heirs, successors and assigns, and providing that New York law would govern any action brought to enforce its provisions. In addition, the security agreement contained clauses in which decedent consented to the exercise of in personam jurisdiction in New York, waived all defenses, including any challenges to

jurisdiction or venue, and agreed that service of process by certified mail was valid unless the partnership was notified otherwise in writing.

On January 31, 1987, the date the first payment was due, decedent and his wife were killed in an airplane accident, and, pursuant to the terms of his will, defendant United Missouri Bank, N.A. (UMB), was appointed executor of his estate. On February 26, 1987, UMB wrote to Integrated, advised it of decedent's death, and asked that the partnership postpone any action on the payments for 30 days. After probate proceedings were commenced in the Kansas courts, UMB, as required under the Kansas Probate Code, published a form "Notice to Creditors" in a Kansas semiweekly newspaper informing creditors of the estate that they must "exhibit their demands" by filing a claim with the Kansas probate court within four months from the date the Notice first appeared (i.e., by July 6, 1987) or their claims would be barred under the Kansas nonclaim statute (Kan Stat Annot § 59-2239 [1]). The statute provided as follows: "All demands, including demands of the state, against a decedent's estate, whether due or to become due, whether absolute or contingent, including any demand arising from or out of any statutory liability of decedent or on account of or arising from any liability as surety, guarantor or indemnitor, and including the individual demands of executors and administrators, not exhibited as required by this act within four months after the date of the first published notice to creditors as herein provided, shall be forever barred from payment, except that the provisions of the testator's will requiring the payment of a demand exhibited later shall control."*

On April 6, 1987, UMB again contacted the partnership and asked it to hold off any action on payments due, but did not mention the necessity of filing a claim in the Kansas probate court. On May 28, 1987, UMB sent the overdue first payment along with late charge to Integrated's offices in New York and, for four years thereafter, tendered every payment due under

* In 1989, some two years after the probate proceeding herein commenced, the Kansas Supreme Court, following the decision in *Tulsa Professional Collection Servs. v Pope* (485 US 478), held that the Due Process Clause of the United States Constitution requires that creditors of an estate who are known or reasonably ascertainable will not be barred by the nonclaim statute unless they receive actual notice of the limitations period (*Matter of McDowell*, 245 Kan 278, 280, 777 P2d 826, 828). During that year, the Kansas Legislature also amended the nonclaim statute to comport with the actual notice to creditors which the United States Supreme Court in *Tulsa* had held to be constitutionally required (*see,* Kan Stat Annot § 59-709).

the note. However, in July 1991, UMB defaulted on the nineteenth scheduled payment and has defaulted on all subsequent payments.

Meanwhile, in October 1987, the partnership assigned and granted a security interest in the note and the security agreement to a third party, who, in turn, assigned the instruments to plaintiff Marine Midland Bank (Marine), located in New York, which instituted the instant action to recover on the note and security agreement. When Marine moved for summary judgment, defendant cross-moved for dismissal of the complaint on the ground that the claim was governed by the Kansas probate statute and was jurisdictionally barred under the terms of that statute. It is plaintiff's appeal from the motion court's dismissal of the complaint on that basis that is before us.

Defendant executor argues that, under the version of the Kansas nonclaim statute which was then in effect, plaintiff is barred from recovering against the estate because of its failure to timely exhibit its claim. Plaintiff, on the other hand, argues that this statute has no effect, as the parties specifically agreed that the transaction was to be governed by New York, rather than Kansas, law.

At the outset it should be noted that, since Statutes of Limitation have traditionally been characterized as procedural, not substantive, and "under common-law rules matters of procedure are governed by the law of the forum" (*Martin v Dierck Equip. Co.*, 43 NY2d 583, 588), a purely procedural Statute of Limitations of another State is ordinarily no bar to a proceeding in New York (*supra*).

While defendant does not dispute that the instant action accrued in New York and was timely brought under New York law, it contends, and the motion court agreed, that the Kansas statute governing claims against a decedent's estate, which is not subject to any tolling provisions and which bars all claims that have not been "exhibited" within four months, regardless of their nature or whether they have accrued, is a substantive rule of law, rather than a purely procedural Statute of Limitations and, therefore, is here controlling, strongly relying on *Bachorik v Allied Control Co.* (56 Misc 2d 982, 983, *affd* 31 AD2d 891) and citing *Southeast Bank v Lawrence* (66 NY2d 910, 912). Significantly, neither of the cases relied upon by the motion court involved a contractual choice of law provision as is here the case. As a general rule, choice of law provisions such as those contained in all of the documents involved in

this transaction, including the promissory note of which enforcement is sought, are valid and enforceable in this State (*Wyatt v Fulrath*, 16 NY2d 169; *Swift & Co. v Bankers Trust Co.*, 280 NY 135, 140; *Bossier Plaza Assocs. Ltd. Partnership v Pierson*, 156 AD2d 246). Moreover, the UCC specifically provides that, as long as a transaction bears a reasonable relation to this State, the parties may agree that New York law shall govern their rights and duties (UCC 1-105). Here, there is no serious dispute that the transaction bears a reasonable relationship to New York; the original sponsor of the limited partnership had its headquarters in New York, all payments due on the note were to be made to the partnership at that headquarters, payments were made to that New York headquarters for four years following the decedent's death and the suit on the note is brought by a holder located in New York. Under these circumstances no viable reason has been presented to warrant excluding the instant transaction from the choice of law provision agreed to by the parties.

In distinction, in *Bachorik v Allied Control Co.* (56 Misc 2d 982, 983, *affd* 31 AD2d 891, *supra*), not only was there no choice of law agreement governing enforcement of the debt but there appear to have been no New York contacts involved beyond the bringing of the suit here. In that setting the court was required to look to general principles governing choice of law to resolve the question of whether the foreign nonclaim statute applied. In doing so, it determined that the foreign jurisdiction, there Connecticut, had the "greatest concern with the specific issue * * * raised" (*supra*, at 983) and that its law therefore applied. Significantly, however, need for such analysis only arises in the absence of a choice of law clause. Similarly, in *Southeast Bank v Lawrence* (*supra*, at 912), the Court applied the general choice of law principles and, significantly, in so doing cited its own earlier decision in *Matter of Fabbri* (2 NY2d 236, 239), which enunciated the general rule as to which jurisdiction's law applies with respect to a decedent's personal property where "no contrary intent appears in the will". In the instant case, of course, such contrary intent clearly appears in the various documents memorializing the debt and transaction in issue.

While a choice of law provision might be held invalid where it was procured by fraud or where the issue is of such overriding concern to the public policy of the other jurisdiction as to override the intent of the parties and the interest of this State in enforcing its own policies (Restatement [Second] of Conflict

of Laws § 187 [2] [b]; *see also,* 19 NY Jur 2d, Conflict of Laws, § 33, at 611), no such showing has been made here. Quite to the contrary, here we have:

"New York's recognized interest in maintaining and fostering its undisputed status as the preeminent commercial and financial nerve center of the Nation and the world (*International Planning v Daystrom, Inc.,* 24 NY2d 372; see, also, *Bache & Co. v International Controls Corp.,* 339 F Supp 341). That interest naturally embraces a very strong policy of assuring ready access to a forum for redress of injuries arising out of transactions spawned here. Indeed, access to a convenient forum which dispassionately administers a known, stable, and commercially sophisticated body of law may be considered as much an attraction to conducting business in New York as its unique financial and communications resources.

"New York's interest in providing a convenient forum is least subject to challenge when a transaction is centered here (see *Rubin v Irving Trust Co.,* 305 NY 288, 305; and *Auten v Auten,* 308 NY 155, 160)." (*Ehrlich-Bober & Co. v University of Houston,* 49 NY2d 574, 581.)

In contrast to these significant New York public policy considerations, we are confronted with a policy characterized by defendant as fundamental to the "prompt, orderly and efficient administration of estates" under Kansas law as embodied in a statute which on its face is violative of due process and has been held unconstitutional by that State's own Supreme Court on that basis. (*See, Matter of McDowell, supra.*) Such can hardly be held to be the kind of predominating public policy concern that would warrant overriding this State's very substantial interest in resolving a dispute in a commercial transaction centered here. Clearly, in this case the relevant public policy considerations strongly support the upholding of the New York choice of law provision agreed to by the parties themselves with respect to enforcement of the transaction in issue.

Having concluded that New York law applies here and that the matter is therefore not barred by the Kansas statute, we similarly reject defendant's objections as to jurisdiction and service. Decedent clearly consented to personal jurisdiction in New York and to service by certified mail. Nor can we accept defendant's argument that the courts of this State are divested of subject matter jurisdiction by Kansas Statutes Annotated § 59-2237, which grants the Kansas probate court exclusive jurisdiction over all controversies involving Kansas estates.

Comity does not require or suggest that the courts of this State should surrender their interest in adjudicating disputes which, like this one, have significant contacts with the commerce of this State (see, *Ehrlich-Bober & Co. v University of Houston, supra*).

Since plaintiff has established that it is the holder of the note sued upon, and defendant has failed to establish that it has any viable defense, summary judgment should be awarded in plaintiff's favor.

Accordingly, the appeal from the order of the Supreme Court, New York County (Ira Gammerman, J.), entered March 27, 1995, denying plaintiff's motion for summary judgment and granting defendant's cross motion to dismiss the complaint, should be deemed an appeal from the judgment of same court and Justice entered May 1, 1995, dismissing the complaint, and as so considered, the judgment should be reversed, on the law, without costs, defendant's cross motion denied, the complaint reinstated, and plaintiff's motion for summary judgment granted.

SULLIVAN, J. P., ROSS, NARDELLI and TOM, JJ., concur.

Order of the Supreme Court, New York County, entered March 27, 1995, deemed an appeal from the judgment of the same court and Justice entered May 1, 1995, reversed, on the law, without costs, defendant's cross motion denied, the complaint reinstated, and plaintiff's motion for summary judgment granted.