■ Carol A. Finucane, Plaintiff, v Interior Construction Corp. et al., Defendants. (And Another Action.) Wiltel Communications Systems, Inc., Third-Party Plaintiff-Appellant, v Baker & McKenzie, Third-Party Defendant-Respondent. [695 NYS2d 322] —Order, Supreme Court, Bronx County (George Friedman, J.), entered April 27, 1998, which denied third-party plaintiff Wiltel Communications Systems' motion for summary judgment declaring third-party defendant contractually obligated to defend and indemnify it in an underlying action, unanimously reversed, on the law, without costs, and the motion granted.

The origin of this appeal lies in a contract between Baker & McKenzie, a large national law firm, and Wiltel Communica-

tions Systems, Inc. (Wiltel), a Delaware corporation with its principal place of business in Oklahoma. The contract provided for Wiltel to furnish and service a telecommunications system for Baker & McKenzie. Wiltel's liability under the contract was limited as follows:

"5)a) WILTEL WILL BE LIABLE FOR PHYSICAL INJURIES TO INDIVIDUALS * * * TO THE EXTENT THAT SUCH DAMAGE OR INJURY IS PROXIMATELY CAUSED BY WILTEL'S NEGLIGENCE * * *

"5)d) Subject to the limitations in section 5)a) * * * Wiltel will be responsible only for physical injury to individuals (including death) to the extent caused by its negligence during maintenance, and which is reported to Wiltel in writing within sixty (60) calendar days of the incident. Customer will release, indemnify, defend, and hold harmless Wiltel * * * from and against all other claims."

The contract further provided that the agreement was "deemed made and GOVERNED BY THE LAWS OF THE STATE OF OKLAHOMA except for its rules regarding conflict of laws."

On September 12, 1994, during the contract period, plaintiff, Carol Finucane, an employee of Baker & McKenzie, fell and was injured in the firm's New York office, when she allegedly tripped over telecommunication wires that Wiltel had been installing. Thereafter, in January, 1996, plaintiff commenced an action sounding in negligence against various defendants, including Wiltel. Wiltel answered the complaint and commenced a third-party action against Baker & McKenzie seeking contribution, common-law indemnification, and contractual indemnification. Wiltel then moved for summary judgment in the third-party action based upon its contractual indemnification claim.

In support of the motion, Wiltel contended that it first learned of plaintiff's accident when it was served with the summons and complaint on February 22, 1996, 17 months after the occurrence. Wiltel maintained that, in view of Baker & McKenzie's failure to notify it of the accident within 60 days of its occurrence, paragraph 5d of the contract requires Baker & McKenzie to defend and indemnify it against plaintiff's claims. Regarding the indemnification provision contained in paragraph 5d, Wiltel asserted that it is enforceable under Oklahoma law, which is controlling under the contract.

Supreme Court denied the motion concluding that the indemnification provision contravened New York's public policy as expressed in General Obligations Law § 5-322.1 (1). This statute provides that, "a[n] * * * agreement * * * in * * * a contract * * * relative to the construction, alteration, repair or

maintenance of a building, structure, appurtenances and appliances * * * purporting to indemnify or hold harmless the promisee against liability for damage arising out of bodily injury to persons or damage to property contributed to, caused by or resulting from the negligence of the promisee * * * is against public policy and is void and unenforceable".

In our view, notwithstanding General Obligations Law § 5-322.1, New York's public policy does not preclude enforcement of the indemnification provision of the contract.

Where, as here, the parties have agreed on the law that will govern their contract, it is the policy of the courts of this State to enforce that choice of law (*Marine Midland Bank v United Missouri Bank*, 223 AD2d 119, 122-123, *lv dismissed without opn* 88 NY2d 1017; *Koob v IDS Fin. Servs.*, 213 AD2d 26, 33), provided that (a) the law of the State selected has a "reasonable relation[ship]" to the agreement (*A. S. Rampell, Inc. v Hyster Co.*, 3 NY2d 369, 381; *International Mins. & Resources v Pappas*, 96 F3d 586, 593; Restatement [Second] of Conflict of Laws §§ 186, 187) and (b) the law chosen does not violate a fundamental public policy of New York (*Cooney v Osgood Mach.*, 81 NY2d 66, 78-79). We will now address these two limitations.

The parties, in agreeing to have the laws of Oklahoma govern their contract, selected the laws of a State that has a reasonable relationship to the contract since Wiltel's principal place of business is located in Oklahoma (*Zerman v Ball*, 735 F2d 15, 20 [2d Cir]; *Valley Juice v Evian Waters*, 87 F3d 604, 607). Moreover, even if New York were deemed to have a greater interest in the litigation, the fact that Wiltel's principal place of business is located in Oklahoma is a sufficient basis to support enforcement of the parties' contractual choice of law (*cf., Eastern Artificial Insemination Coop. v La Bare*, 210 AD2d 609).

Regarding the public policy limitation, the party opposing enforcement of a contractual choice of law on this ground bears a " 'heavy burden' " of demonstrating that the foreign law is offensive to our public policy (*Cooney v Osgood Mach.*, *supra*, at 80). This burden is not met by a mere showing that our law is different from that of a sister State (*see, Loucks v Standard Oil Co.*, 224 NY 99, 111). Rather, it must be demonstrated that the applicable foreign law would " 'violate some fundamental principle of justice, some prevalent conception of good morals, some deep-rooted tradition of the common weal' " (*Cooney v Osgood Mach.*, *supra*, at 78, quoting *Loucks v Standard Oil Co.*, *supra*, at 111). Stated otherwise, "resort to the public policy

exception should be reserved for those foreign laws that are truly obnoxious" to the laws of our State (*Cooney v Osgood Mach., supra*, at 79). Baker & McKenzie has failed to meet its burden on this issue.

The policy reflected in General Obligations Law § 5-322.1 is not a fundamental one since the statute is not a "deep-rooted tradition of the common weal" (*cf., Cooney v Osgood Mach., supra*, at 79). In this regard, section 5-322.1 was first enacted in 1975. Further, it cannot be said that Oklahoma law is "truly obnoxious" to the law of this State. Significantly, Oklahoma, consistent with the policy expressed in General Obligations Law § 5-322.1, will only enforce an indemnification provision in a contract where it is demonstrated, *inter alia*, that there is no disparity in the bargaining positions of the contracting parties (*see, e.g., Schmidt v United States*, 912 P2d 871 [Okla]; *Kinkead v Western Atlas Intl.*, 894 P2d 1123 [Okla]). We therefore conclude that, notwithstanding General Obligations Law § 5-322.1, Oklahoma's more permissive view on indemnification provisions does not violate the fundamental public policy of this State.

Finally, we have considered Baker & McKenzie's remaining contentions related to purported ambiguities in the contract and find such contentions to be without merit.

In view of the foregoing, we reverse the order of the Supreme Court and declare that Baker & McKenzie is required to defend and indemnify Wiltel in the underlying negligence action. Concur—Rosenberger, J. P., Nardelli, Lerner, Saxe and Friedman, JJ.