OPINION OF THE COURT
Herman Cahn, J.
Defendant moves to dismiss for failure to state a cause of action (CPLR 3211 [a] [7]).
*720 This is an action for declaratory judgment, arising out of an agreement to lease computers. This court denies the motion, finding that portions of the agreement are against the public policy of New York State.
Plaintiff Andin International Inc. (Andin) is a jewelry manufacturer, headquartered in New York. Defendant Matrix Funding Corporation (Matrix) is a Utah corporation which is in the business of leasing computer equipment for office use.
On April 2, 1998, the parties entered into a “Master Lease Agreement” pursuant to which Matrix leased certain IBM computer software, hardware and accessories (the equipment) to Andin, for use at its New York facilities. In the complaint, Andin alleges that the lease term was for 36 months at a monthly rental of $27,816.81. The equipment was delivered on April 1, 1998, and the required monthly payments were duly made.
On February 15, 2001, approximately two months prior to the end of the lease term, Andin attempted to contact Matrix to arrange for return of the property at the termination of the lease. Andin alleges that when one of its employees called Matrix, he was told, by one Mr. Pistorius, that Matrix had closed its office, and that its employees now worked for another company, Applied Financials, at the same location and telephone number. The Andin employee informed Pistorius that Andin was not interested in renewing the lease, to which, Pistorius replied that Andin was “past the cancel date.” Sometime thereafter, Andin decommissioned the property and placed it in storage.
A review of the lease provisions indicates that, although paragraph 3 of the lease states that Andin may terminate it after the initial 36-month term, paragraph 18 (m) places significant limitations on that right. The relevant provisions provide as follows:
“3. TERM OF LEASE:
“The term of any Lease, as to all Property designated on the applicable Schedule, shall commence on the Acceptance Date for such Property, and shall continue for an ‘Initial Period’ ending that number of months from the Commencement Date as specified in the Schedule. Thereafter, Lessee shall have options to purchase or return the Property or to extend the Lease, all as provided in Section 18(m) of this Agreement.”
Paragraph 18 (m) provides, in part, that:
*721 “18. GENERAL
“(m) Lessee’s Options at end of Initial Period. At the end of the Initial Period of any Lease, or upon any expiration of any renewal or extension thereof as provided for in option (2) herein or otherwise, Lessee shall, provided at least one hundred eighty (180) days prior written notice is received by Lessor from Lessee via certified mail, do one of the following: (1) purchase the Property for a mutually agreeable price, (2) extend the Lease for twelve (12) additional months at the rate specified on the respective Schedule, or (3) return the Property to Lessor at Lessee’s expense to a destination with the continental United States specified by Lessor and terminate the Schedule; provided, however, that for option (3) to apply * * * Lessee must enter into a new Schedule with Lessor to lease Property which replaces the Property listed on the old Schedule. With respect to options (1) and (3), each party shall have the right in its absolute and sole discretion to accept or reject any terms of purchase or of any new Schedule, as applicable. In the event Lessor and Lessee have not agreed to either option (1) or (3) by the end of the Initial Period or any renewal or extension period then in effect, or if Lessee fails to give written notice of its option via certified mail at least one hundred eighty (180) days prior to the termination of the Initial Period or any renewal or extension period then in effect, then option (2) shall apply at the end of the Initial Period or any renewal or extension period then in effect.”
Matrix’s position is that the above lease provisions provide Andin with three options concerning the disposition of the equipment at the end of the initial period. Specifically, under paragraph 18 (m) of the lease, Andin may: (1) purchase the equipment from Matrix at a mutually agreeable price; (2) extend the lease for an additional 12-month period; or (3) return the equipment in exchange for new equipment pursuant to a new lease. The option must be exercised at least 180 days prior to the lease’s expiration date. Matrix further asserts that under the terms of the lease, if Andin fails to exercise any of these three options, option 2 applies, thus automatically extending the lease for one additional year. A careful reading of the paragraph shows that it is almost impossible for a lessee to terminate its relationship with the lessor.
*722 On February 12, 2002, Andin received a letter from Matrix, alleging that Andin was in default in paying $238,598.76, and that the “accelerated balance” due was $395,485.49. Matrix also demanded return of the property.
Andin then commenced the within action for a judgment declaring that: (1) pursuant to General Obligations Law § 5-901, upon Matrix’s failure to notify Andin that the lease would be renewed, it ended, and Andin is not indebted to Matrix (first cause of action); (2) paragraph 18 (m) of the lease, which allows Matrix to reject any terms of purchase, and which automatically renews the lease, year after year, is unconscionable, and that inasmuch as Andin has paid the reasonable value of the property as determined by the monthly lease rate, the lease has terminated (second cause of action); (3) Matrix has abandoned the equipment which is the subject of the lease and said equipment may be disposed of by Andin (third cause of action); and (4) Andin’s obligations under the lease terminated upon the expiration of the lease’s original term (fourth cause of action).
Andin’s first cause of action is based on General Obligations Law § 5-901 which provides that where a lease is deemed renewed, unless the lessee provides notice of its intention not to renew, the lessor must give the lessee notice of the lessee’s obligation to provide such notice prior to the time such notice is due, or the automatic renewal provision is ineffective. However, paragraph 17 (b) of the lease contains a choice of law provision, providing that the lease will be governed under the laws of the State of Utah, Matrix’s home state. Utah does not have a statute which corresponds to General Obligations Law § 5-901.
As a general rule, New York courts will enforce contractual provisions for choice of law provided that (a) the law of the state selected has a reasonable relationship to the agreement, and (b) the law chosen does not violate a fundamental public policy of New York (see Finucane v Interior Constr. Corp., 264 AD2d 618, 620 [1st Dept 1999]; Marine Midland Bank v United Missouri Bank, 223 AD2d 119 [1st Dept], lv dismissed 88 NY2d 1017 [1996]; Micro Balanced Prods. Corp. v Hlavin Indus., 238 AD2d 284 [1st Dept 1997]). Here, Andin is a New York based corporation and the lease was for computer equipment to be delivered to and used in New York. The equipment was delivered from the manufacturers directly to Andin in New York. It apparently never saw Utah. Although Matrix is a Utah corporation, payments were made to Matrix in Portland, Oregon.
*723 General Obligations Law § 5-901 was enacted specifically to protect New Yorkers from this type of lease provision. Originally enacted in 1953 as General Business Law § 399, the legislative sponsor of the bill explained its rationale as follows:
“This bill seeks to protect all businessmen from fast talking sales organizations armed with booby traps which they plant in business contracts involving equipment rentals * * * Undoubtedly, many unsuspecting small businessmen are taken in by such evil practices which — taken collectively — are costing those who cannot afford it many thousands of dollars yearly.” (Peerless Towel Supply Co. v Triton Press, 3 AD2d 249, 251 [1st Dept 1957], quoting 1953 NY Legis Ann, at 61-62.)
In view of the public policy purpose behind the section, General Obligations Law § 5-901 is applicable to the within transaction.
Therefore, the motion to dismiss is denied.
Even if this court were to apply Utah law, paragraph 18 (m) might, in all likelihood, be unenforceable. Utah recognizes the doctrine of unconscionability with regard to contracts, and examines contracts in terms of two forms of unconscionability: “substantive unconscionability,” which examines the relative fairness of the obligations assumed, and “procedural unconscio-nability,” which focuses on the manner in which the contract was negotiated (Resource Mgt. Co. v Western Ranch & Livestock Co. Inc., 706 P2d 1028 [Utah 1985]; see also Equitable Life & Cas. Ins. Co. v Ross II, 849 P2d 1187 [Utah Ct App 1993]). Under Utah law, “[s]ubstantive unconscionability is indicated by ‘contract terms so one-sided as to oppress or unfairly surprise an innocent party, an overall imbalance in the obligations and rights imposed by the bargain,’ excessive price or significant cost disparity” (Resource Mgt. Co. v Western Ranch & Livestock Co. Inc., supra, 706 P2d at 1041 [citations omitted]). A gross disparity in contractual terms, even absent evidence of procedural unconscionability, can support a finding of unconscionability (id. at 1043).
Here, under the terms of the lease, unless Andin is willing to meet the price unilaterally set for the purchase of the equipment, Andin will be bound for a successive 12-month period to renting the equipment. This clause, which, in essence, creates a perpetual obligation, is sufficiently one-sided and imbalanced so that it might be found to be unconscionable. Under Utah law, where it appears to the court that the contract, or any *724 clause thereof, may be unconscionable, “the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose and effect to aid the court in making the determination” (Utah Code Ann § 70A-2-302 [2] [1953]).
Accordingly, it is ordered that defendant Matrix Funding Corporation’s motion to dismiss is denied.