■ WELSBACH ELECTRIC CORP., Respondent, v MASTEC NORTH AMERICA, INC., Appellant. [804 NYS2d 805]—

In an action, inter alia, to recover damages for breach of contract, the defendant appeals from so much of an order of the

Supreme Court, Queens County (Glover, J.), dated January 6, 2004, as granted that branch of the plaintiff's motion which was to dismiss its fifth and eleventh affirmative defenses.

Ordered that the order is affirmed insofar as appealed from, with costs.

In September 1999 the defendant, an entity incorporated in the State of Florida, entered into a primary contract with Telergy Metro LLC (hereinafter Telergy), a nonparty, to serve as general contractor for a construction project in New York City. The primary contract included a termination clause which provided the defendant with a right to terminate the contract if Telergy became insolvent.

Thereafter, on or about November 28, 2000, the defendant entered into an agreement with the plaintiff to serve as a subcontractor for the project (hereinafter the subcontract). The subcontract, which was governed by Florida law, included a "pay-when-paid" provision which made the defendant's obligation to pay the plaintiff contingent upon and subject to the defendant's receipt of payment from Telergy for work performed. The subcontract also included a termination provision which provided that upon termination of the primary contract, the subcontract would also be terminated upon the same basis and upon the same effective date as the primary contract.

When Telergy became insolvent in August 2001, the primary contract and the subcontract were both terminated. Neither the plaintiff nor the defendant received payment for work performed on the project.

The plaintiff subsequently commenced this action to recover moneys allegedly due and outstanding under the subcontract. The defendant asserted, inter alia, as affirmative defenses that the pay-when-paid provision and the termination provision of the subcontract relieved it of any payment obligation. Thereafter, the plaintiff moved, among other things, for summary judgment dismissing those affirmative defenses, and the Supreme Court granted that relief. We affirm.

Generally, the courts of this State will uphold choice-of-law provisions unless the jurisdiction whose law is to be upheld has no reasonable relation to the subject agreement, or enforcement of the provision would violate a fundamental public policy of this State (see *Cooney v Osgood Mach.*, 81 NY2d 66, 78-79 [1993]; *Schultz v Boy Scouts of Am.*, 65 NY2d 189, 202 [1985]; *Culbert v Rols Capital Co.*, 184 AD2d 612, 613 [1992]).

The New York Court of Appeals stated in *Schultz v Boy Scouts of Am.* (*supra* at 202) that: "Public policy is found in the State's

Constitution, statutes and judicial decisions and the proponent of the exception must establish that to enforce the foreign law 'would violate some fundamental principle of justice, some prevalent conception of good morals, some deep-rooted tradition of the common weal' expressed in them (*Loucks v Standard Oil Co.*, [224 NY 99, 111 (1918)]. In addition, the proponent must establish that there are enough important contacts between the parties, the occurrence and the New York forum to implicate our public policy and thus preclude enforcement of the foreign law."

Although the pay-when-paid provision at issue is enforceable under Florida law (*see Everett Painting Co., Inc. v Padula & Wadsworth Constr., Inc.*, 856 So 2d 1059 [2003] [Fla App]), the New York Court of Appeals held in *West-Fair Elec. Contrs. v Aetna Cas. & Sur. Co.* (87 NY2d 148 [1995]) that a pay-when-paid provision which forces a subcontractor to assume the risk that the owner will fail to pay the general contractor is void and unenforceable as contrary to public policy as set forth in Lien Law § 34.

Lien Law § 34, as amended in 1975 (L 1975, ch 74, § 1), provides: "Notwithstanding the provisions of any other . . . law, any contract, agreement or understanding whereby the right to file or enforce any lien created *under article two is waived, shall be void as against public policy and wholly unenforceable.*" (Emphasis added.)

The Lien Law is remedial in nature and intended to protect those who have expended labor or materials to improve real property at the direction of the owner or general contractor (*see West-Fair Elec. Contrs. v Aetna Cas. & Sur. Co., supra* at 157).

In *West-Fair*, the New York Court of Appeals reviewed the Legislature's intent in enacting Lien Law § 34 in reaching its determination that the pay-when-paid provision at issue was contrary to public policy. The Court of Appeals acknowledged that the sponsor of the bill which the Legislature ultimately enacted as Lien Law § 34 stated: " 'Since the year 1897 the Legislature has recognized the need to afford protection to those who furnish work, labor and services or provide materials for the improvement of real property. *Throughout the succeeding years changes in the law have been enacted to clarify, enlarge and perfect the right of those who improve real property to be paid.* The Lien Law has been the sole vehicle through which such interests may gain a measure of protection . . . It has become prevalent in the construction industry to require contractors, subcontractors, materialmen and laborers to sign contracts or subcontracts containing clauses which waive the

right of the signator to file or enforce his mechanic's [*sic*] lien. This legal barrier is thus imposed long before any work is performed or materials furnished. *The surrender of such protective rights as a prerequisite to obtaining a contract or subcontract is repugnant, against public policy and should be void'* (Mem of Senator Donovan, L 1975, ch 74, 1975 NY Legis Ann, at 341)" (*West-Fair Elec. Contrs. v Aetna Cas. & Sur. Co., supra* at 156-157 [emphasis added]).

While we agree with our dissenting colleague that the foreign jurisdiction (i.e., the State of Florida) has a reasonable relationship to the subject agreement (*see generally Finucane v Interior Constr. Corp.*, 264 AD2d 618, 620 [1999]) predicated on the defendant's incorporation in Florida and the underlying Florida choice-of-law provision, we nonetheless find that enforcement of the pay-when-paid provision would violate the public policy of this State (*see West-Fair Elec. Constr. v Aetna Cas. & Sur. Co., supra*).

Our dissenting colleague relies on the decision of the Appellate Division, First Department, in *Hugh O'Kane Elec. Co., LLC v MasTec N. Am., Inc.* (19 AD3d 126 [2005]), in which that court determined that the pay-when-paid provision at issue was valid pursuant to the parties' Florida choice-of-law provision, and that the prohibition against this type of provision is not a deeply rooted tradition of this State. However, we do not find the reasoning and conclusion of the Appellate Division, First Department, in *O'Kane* to be persuasive.

In reaching its conclusion, the Appellate Division, First Department, indicated in *O'Kane* that between 1929 (when Lien Law § 34 was originally enacted) and 1975 (when Lien Law § 34 was amended), subcontractors could waive their lien rights by express agreement in writing, and before that, at common law, presumably could do so orally (*see Hugh O'Kane Elec. Co., LLC v Mas Tech N. Am., Inc., supra* at 127). The First Department also acknowledged that "[e]ven after the enactment of current section 34 in 1975, it was not clear that pay-when-paid provisions were covered . . . until the Court of Appeals said so in *West-Fair*" (*id.* at 127-128).

We note that Lien Law § 3, which permits a subcontractor who performs work with the consent of the owner or its agent to have a lien on the property for the principal of and accrued interest on the value of the agreed price of the labor or materials, was enacted to "protect the functioning of the construction industry" (*West-Fair Elec. Contrs. v Aetna Cas. & Sur. Co.*, 49 F3d 48, 50 [2d Cir 1995]). Further, the Court of Appeals acknowledged in *West-Fair* that the Legislature, by amending

Lien Law § 34, extended greater protection to subcontractors and others who improve real property by ensuring that they receive payment for their labor and materials (*West-Fair Elec. Contrs. v Aetna Cas. & Sur. Co.,* 87 NY2d at 156, *supra*).

Notwithstanding the First Department's recognition in *O'Kane* that before 1975, subcontractors could possibly waive their lien rights to the extent that where, as here, a pay-when-paid provision operates to effect a waiver expressly proscribed by Lien Law § 34, and is inconsistent with this State's long-standing public policy to "advance building and construction by assuring subcontractors of payment in the event of the insolvency of the owner or the general contractor" (*West-Fair Elec. Constr. v Aetna Cas. & Sur. Co.,* 49 F3d at 50 [2d Cir]), such provision is void and unenforceable.

Therefore, in light of the foregoing, we conclude that the Supreme Court correctly granted the relief requested. Cozier, J.P., Mastro and Fisher, JJ., concur.

Krausman, J., dissents and votes to reverse the order insofar as appealed from, on the law, deny that branch of the motion which was to dismiss the fifth and eleventh affirmative defenses, and reinstate those affirmative defenses, with the following memorandum: Lien Law § 34, as amended in 1975, has been held to prohibit "pay-when-paid" provisions, which force a subcontractor to assume the risk that the owner will fail to pay the general contractor (*see West-Fair Elec. Contrs. v Aetna Cas. & Sur. Co.,* 87 NY2d 148 [1995]). Although such provisions are unenforceable under New York law, I disagree with the majority's conclusion that the prohibition against pay-when-paid provisions is such a fundamental public policy of this State that we should disregard the parties' agreement to permit Florida law to govern their dispute. Accordingly, I respectfully dissent.

As noted by the majority, the facts relevant to this appeal are largely undisputed. On September 10, 1999, the defendant MasTec North America, Inc. (hereinafter MasTec), was hired to construct a fiber optic telecommunications network for Telergy Metro, LLC (hereinafter Telergy). Over one year later, on or about November 28, 2000, MasTec entered into an agreement to subcontract electrical work to the plaintiff Welsbach Electric Corp. (hereinafter Welsbach). The subcontract, which the parties agreed would be governed by Florida law, contained a pay-when-paid provision which stated, inter alia, that "all payments to Subcontractor by Contractor are expressly contingent upon and subject to receipt of payment for the Work by Contractor from Owner." Both the primary contract and the subcontract were terminated in August 2001, apparently due to Telergy's

insolvency. Welsbach thereafter commenced this action against MasTec to recover payment for work performed under the parties' subcontract. As an affirmative defense, MasTec, which claimed that it had not been paid by Telergy, relied upon the subcontract's pay-when-paid provision. Although pay-when-paid provisions are permissible under Florida law, the Court of Appeals has interpreted Lien Law § 34 to bar such provisions in New York.

As a general rule, where the parties have agreed upon the law that will govern their contract, their choice of law will be given effect provided that the jurisdiction whose law is to be applied has a reasonable relationship to the agreement, and enforcement would not violate a fundamental public policy of New York (*see Finucane v Interior Constr. Corp.,* 264 AD2d 618 [1999]; *Marine Midland Bank v United Mo. Bank,* 223 AD2d 119, 122-123 [1996]; *Culbert v Rols Capital Co.,* 184 AD2d 612, 613 [1992]). Here, the record indicates that MasTec is a Florida corporation alleged to be headquartered in Miami. Thus, even though the subject agreement was for work to be performed in New York, Florida can be said to have a "reasonable relationship" to the parties' contract (*Finucane v Interior Constr. Corp., supra* at 620). Accordingly, resolution of this appeal turns on the issue of whether New York should refuse to honor the parties' choice-of-law agreement on public policy grounds.

In *Cooney v Osgood Mach.* (81 NY2d 66, 78 [1993]), the Court of Appeals explained that a public policy exception to general choice-of-law principles applies "when otherwise applicable foreign law would 'violate some fundamental principle of justice, some prevalent conception of good morals, some deep-rooted tradition of the common weal' (*Loucks v Standard Oil Co.* 224 NY 99, 111 [1918])." While this State's constitution, statutes, and judicial decisions are a reflection of its public policy, the Court of Appeals cautioned in *Cooney* that "not every difference between foreign and New York law threatens our public policy." Rather, "resort to the public policy exception should be reserved for those foreign laws that are truly obnoxious" (*id.* at 79). In my view, the public policy reflected by Lien Law § 34 does not rise to this level.

As amended in 1975, Lien Law § 34 serves the salutary purpose of helping to ensure that subcontractors who provide materials and labor for the improvement of real property have an effective means of securing payment for their work (*see West-Fair Elec. Contrs. v Aetna Cas. & Sur. Co., supra*). To this end, Lien Law § 34 bars enforcement of contractual provisions which would require a subcontractor to waive the right to file and

enforce a mechanic's lien on real property. In *West-Fair,* the Court of Appeals extended the reach of Lien Law § 34 to pay-when-paid provisions, which serve to transfer the risk that the owner will fail to make payment from the general contractor to the subcontractor. The Court reasoned that since mechanics' liens may not be enforced until a debt becomes due and payable, pay-when-paid provisions essentially require subcontractors to waive their rights to enforce such liens by accepting a condition precedent to payment that, because of the owner's insolvency, will never arise (*see Blandford Land Clearing Corp. v National Union Fire Ins. Co. of Pittsburgh, Pa.,* 260 AD2d 86 [1999]). The Court of Appeals thus concluded that pay-when-paid provisions are "void and unenforceable as contrary to public policy set forth in the Lien Law § 34." (*West-Fair Elec. Contrs. v Aetna Cas & Sur. Co.,* 87 NY2d at 158.)

However, the fact that Lien Law § 34 expresses this State's public policy of providing a measure of protection to subcontractors whose efforts are responsible for improving real property does not automatically lead to the conclusion that this is a deeply rooted, fundamental policy. As the Court of Appeals observed in *Cooney v Osgood Mach.* (*supra* at 79), "if New York statutes or court opinions were routinely read to express fundamental public policy, choice of law principles would be meaningless. Courts invariably would be forced to prefer New York law over conflicting foreign law on public policy grounds." In determining whether Lien Law § 34 is reflective of fundamental public policy, it is significant that New York's prohibition against permitting subcontractors to waive their lien rights is not a long-standing one. The Appellate Division, First Department, recently pointed out in *Hugh O'Kane Elec. Co., LLC v MasTec N. Am., Inc.* (19 AD3d 126 [2005]) that Lien Law § 34, as originally enacted in 1929, did indeed permit subcontractors to waive their lien rights in writing. Thus, before 1975, it was not the declared public policy of this State to bar enforcement of such waivers. Furthermore, even after the 1975 amendment of Lien Law § 34, the courts of this State continued to uphold the validity of pay-when-paid provisions until the Court of Appeals held in *West-Fair* that such provisions were encompassed within the protective scope of the statute (*see e.g. David Fanarof, Inc. v Dember Constr. Corp.,* 195 AD2d 346 [1993]; *Crown Plastering Corp. v Elite Assoc.,* 166 AD2d 495 [1990]).

Moreover, in determining whether enforcement of the pay-when-paid provision in the parties' subcontract so contravenes the public policy of this State that their choice of law should be nullified, it is important to note that this agreement was freely

negotiated by two established and experienced contracting companies. Such sophisticated commercial entities should "generally should be free to enjoy the freedom to contract absent judicial intervention" (*Wellington Power Corp. v CNA Sur. Corp.,* 614 SE2d 680, 686 [2005] [W Va]). Accordingly, while it cannot be gainsaid that the Lien Law has evolved in recent years to extend greater protection to subcontractors, I believe that the Appellate Division, First Department, correctly concluded in *Hugh O'Kane Elec. Co., LLC v MasTec N. Am., Inc. (supra)* that the prohibition against pay-when-paid provisions is not such a deeply-rooted tradition of this State that the public policy exception to choice-of-law principles should apply. Thus, I would reverse the order insofar as appealed from, deny that branch of the motion which was to dismiss the fifth and eleventh affirmative defenses, and reinstate those affirmative defenses, predicated upon the pay-when-paid provisions of the subcontract.