**CAP GEMINI ERNST & YOUNG, U.S., L.L.C., Plaintiff–Appellee,**

v.

**John NACKEL, Defendant–Appellant.**

**Docket No. 02–9447.**

United States Court of Appeals, Second Circuit.

Argued: Aug. 26, 2003.

Decided: Oct. 14, 2003.

John S. West, Allred, Maroko & Goldberg, Los Angeles, CA, for Defendant–Appellant.

Christopher C. Heisenberg, Winston & Strawn (Alan D'Ambrosio, on the brief), New York, NY, for Plaintiff–Appellee.

Before: MESKILL, MINER, and STRAUB, Circuit Judges.

PER CURIAM.

This case arises from an employment dispute between defendant John Nackel

("Nackel") and plaintiff Cap Gemini Ernst & Young, U.S., L.L.C. ("Cap Gemini"). Nackel alleges that he was terminated from Cap Gemini in retaliation for protesting the discriminatory conduct of a senior Cap Gemini executive. After Nackel filed suit in Los Angeles Superior Court asserting various claims under California state law, Cap Gemini commenced an arbitration before the American Arbitration Association in New York and filed this present action in the Southern District of New York, seeking to compel arbitration pursuant to the parties' employment agreement and to recover damages for Nackel's alleged breach of the arbitration provisions of the employment agreement.

By written opinion and order, issued on November 22, 2002, the United States District Court for the Southern District of New York (Denise Cote, *Judge*) granted Cap Gemini's request to compel arbitration and stayed Nackel from pursuing any claims in the California proceeding. Nackel now appeals, arguing that the District Court erred in applying New York law in determining whether to order arbitration. For the reasons that follow, we vacate the judgment of the District Court and remand for further development of the choice-of-law question.

### Jurisdiction

As a threshold matter, we must determine whether the District Court's November 22, 2002 order constitutes a "final decision" within the meaning of § 16 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 16. Section 16 of the FAA permits immediate appeal from "a final decision with respect to an arbitration," 9 U.S.C. § 16(a)(3), but expressly prohibits appeal from an interlocutory order, compelling arbitration or staying an action pending arbitration, unless the district court certifies an interlocutory appeal pursuant to 28 U.S.C. § 1292(b). *See* 9 U.S.C. § 16(b)(1), (3). In *Green Tree Financial Corp. v. Randolph*, 531 U.S. 79, 86, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000), the Supreme Court held that the term "final decision," as used in § 16, must be given "its well-established meaning" as a "decision that ends the litigation on the merits and leaves nothing more for the court to do but execute the judgment." (internal quotation marks omitted). Thus, while an order compelling arbitration and dismissing all other claims is an appealable "final decision" within the meaning of § 16, "[h]ad the District Court entered a stay instead of a dismissal ... that order would not be appealable." *Id.* at 87 n. 2, 121 S.Ct. 513.

In this case, the basis for our jurisdiction over the appeal was initially unclear. Although the District Court compelled arbitration, it did not dismiss the action or specifically dispose of Cap Gemini's independent breach of contract claim. Due to our preliminary concerns as to whether the November 22, 2002 order was an appealable final decision, we asked the parties to submit letter briefs addressing the question of jurisdiction. *See FDIC v. Four Star Holding Co.*, 178 F.3d 97, 100 n. 2 (2d Cir.1999) (noting that the court "may examine subject matter jurisdiction, *sua sponte*, at any stage of the proceeding"). The parties' briefing revealed that the District Court had actually issued another order on January 31, 2003, after the notice of appeal had been filed, transferring the action to the District Court's suspense docket.[1] The District Court's January 31,

---

1. Southern District Rule 20 for the for Division of Business Among District Judges provides that a case may be transferred to the suspense docket if "for reasons beyond the control of the court" the case "can neither be tried or otherwise terminated." The rule fur-

2003 order further required Cap Gemini to "provide a status letter to [the District] Court every six months, with the first letter due on May 21, 2003." Although the parties jointly asserted that the District Court had intended to refer all claims, including Cap Gemini's breach of contract claim, to arbitration, and that the District Court had merely retained the action on its docket to facilitate post-arbitration confirmation proceedings, the January 31, 2003 order did not unambiguously indicate that the District Court had decided all of the pending claims.

At oral argument, we suggested that the parties seek a clarifying order from the District Court, and on September 9, 2003, at the parties' request, the District Court issued another order stating that: "It was the [c]ourt's intention and understanding that the November 2002 Order was a final order in that it disposed of the entire case by staying the California action and sending the parties to arbitrate all of their claims. The case was not dismissed in order to allow the parties the opportunity to seek confirmation of any arbitral award without filing a second action in federal court."[2] In light of the District Court's subsequent expression of unambiguous intent to issue a final order, we conclude that we may exercise jurisdiction over the appeal.

However, as we have previously emphasized, the rule of finality set forth in *Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000) is strict, and district "[c]ourts should be aware that a dismissal renders an order appealable under [FAA] § 16(a)(3), while the granting of a stay [or other intermediary action] is an unappealable interlocutory order under § 16(b)." *Salim Oleochemicals v. M/V Shropshire*, 278 F.3d 90, 93 (2d Cir.), *cert. denied*, 537 U.S. 1088, 123 S.Ct. 696, 154 L.Ed.2d 632 (2002). Because "[u]nnecessary delay of the arbitral process through appellate review is disfavored," we have "urge[d] district courts to be as clear as possible" about their intent to dismiss, stay, or "do something else entirely" when compelling arbitration due to the critical impact of such procedural choices on our appellate jurisdiction under the FAA. *Id.*

Accordingly, while we exercise jurisdiction over this appeal, we duly note that the Court as well as the parties have expended substantial time and effort to clarify a rather simple procedural point. Although we permitted the parties in this case to seek confirmation of jurisdiction due to the ambiguity in the record, henceforth, we will abide by both the letter and spirit of *Green Tree* and require an official dismissal of all claims before reviewing an order to compel arbitration. We further emphasize that parties and district courts have an obligation to ensure that the finality of the district court's decision is evident from the record, so that no further reconstruction of the district court's intent need be attempted on appeal.

Having resolved the question of jurisdiction, we turn now to the merits of Nackel's appeal.

---

ther provides, "[i]n the event the case becomes activated, [the case] shall be restored to the docket of the transferor judge."

2. During the pendency of an appeal, the District Court retains inherent authority to clarify the scope and purpose of its prior orders. *See, e.g., In re Grand Jury Proceedings Under*

*Seal*, 947 F.2d 1188, 1190 (4th Cir.1991); *see also* 20 James Wm. Moore et al., *Moore's Federal Practice* § 303.32[2][b] (3d ed.2003) (noting that "[t]he district court may take any steps that will aid the circuit court's handling of the appeal").

## Choice of Law

■ We review the District Court's decision to compel arbitration *de novo*. *See Doctor's Assocs. v. Hamilton*, 150 F.3d 157, 160 (2d Cir.1998).

As the District Court noted, Nackel does not dispute that his employment agreement contains an arbitration clause encompassing the discrimination claims that he brought in the California state action.[3] Nackel further acknowledges that his employment agreement contains a choice-of-law provision which provides that: "This Agreement shall be governed by and construed in accordance with the laws of the State of New York without regard to its conflict of laws provisions." Despite the apparent contractual choice of New York law, Nackel argues that California law must be applied because his discrimination claims bear no reasonable relationship to New York.

Nackel points out that he resides in California, that he worked out of Cap Gemini's Los Angeles office, that he is asserting claims under the California Fair Employment and Housing Act ("FEHA"), Cal. Gov't Code § 12900 *et seq.*, and that all of the alleged events underlying his retaliation claim took place in California. Under these circumstances, Nackel argues that California law should apply. Moreover, Nackel maintains that the choice-of-law question is case dispositive because California law would invalidate the parties' arbitration agreement as contractually unconscionable and, therefore, bar Cap Gemini's attempt to compel arbitration.

**A.** *Validity of the Arbitration Agreement*

■ Section 2 of the FAA provides that a written arbitration provision in any contract involving interstate commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. While the FAA expresses a strong federal policy in favor of arbitration, the purpose of Congress in enacting the FAA "was to make arbitration agreements as enforceable as other contracts, *but not more so.*" *Opals on Ice Lingerie v. Body Lines Inc.*, 320 F.3d 362, 369 (2d Cir.2003) (emphasis in original) (quoting *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 n. 12, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967)). Accordingly, while the FAA creates a "body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act," *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983), in evaluating whether the parties have entered into a valid arbitration agreement, the court must look to state law principles. *See, e.g., Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996) (noting that "[g]enerally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening § 2 [of the FAA]"); *Perry v. Thomas*, 482 U.S. 483, 492–93 n. 9, 107 S.Ct. 2520, 96 L.Ed.2d 426 (1987) ("state law, whether of legislative or judicial origin, is applicable [in a FAA action] if that law ... govern[s] issues concerning

**3.** The arbitration clause states in relevant part: "[A]ny dispute, controversy or claim between us ... arising out of your employment with us or otherwise concerning any rights, obligations or other aspects of your employment relationship, including, without limitation discrimination claims ... shall be finally settled by arbitration in the City of New York, before, and in accordance with the arbitration procedures set forth in the attached Annex 4, and the commercial arbitration rules then obtaining of the American Arbitration Association (the "AAA")".

the validity, revocability, and enforceability of contracts generally").

■ As a result, prior to compelling arbitration, the district court must first determine two threshold issues that are governed by state rather than federal law: (1) Did the parties enter into a contractually valid arbitration agreement? and (2) If so, does the parties' dispute fall within the scope of the arbitration agreement? *See, e.g., John Hancock Mut. Life Ins. Co. v. Olick,* 151 F.3d 132, 137 (3d Cir.1998). Here, Nackel contends that New York and California law provide fundamentally different answers to the first question—at least to the extent that the parties' agreement mandates arbitration of his FEHA claims.

■ It is clear that questions of contractual validity relating to the unconscionability of the underlying arbitration agreement must be resolved first, as a matter of state law, before compelling arbitration pursuant to the FAA. *See, e.g., Alexander v. Anthony Int'l, L.P.,* 341 F.3d 256, 264 (3d Cir.2003) (recognizing that unconscionability must be addressed first and noting that "considerations of public policy and the loss of state statutory rights" are relevant although not dispositive of the unconscionability inquiry); *Bess v. Check Express,* 294 F.3d 1298, 1306–09 (11th Cir. 2002) (analyzing potential unconscionability of arbitration agreement under Alabama law); *Lewis Tree Serv., Inc. v. Lucent Tech. Inc.,* 239 F.Supp.2d 322, 328–29 (S.D.N.Y.2002) (determining that arbitration agreement was not a contract of adhesion under New Jersey law as a predicate to compelling arbitration). It also appears well established under California law that "courts may refuse to enforce an unconscionable arbitration agreement." *Ingle v. Circuit City Stores, Inc.,* 328 F.3d 1165, 1170 (9th Cir.2003); *see also Circuit City Stores, Inc. v. Adams,* 279 F.3d 889, 893–

94 (9th Cir.) (same), *cert. denied,* 535 U.S. 1112, 122 S.Ct. 2329, 153 L.Ed.2d 160 (2002).

In granting Cap Gemini's motion to compel arbitration, the District Court did not reject Nackel's contention that California and New York law could reach potentially different results on the question of contractual validity. However, without further explanation, the District Court resolved the threshold choice-of-law question in Cap Gemini's favor, noting that the parties' employment agreement is governed by New York law.

### B. *New York Choice-of-Law Analysis*

■ As "[a] federal court sitting in diversity jurisdiction," the District Court is obligated to "apply the law of the forum state" in analyzing preliminary choice-of-law questions. *Fieger v. Pitney Bowes Credit Corp.,* 251 F.3d 386, 393 (2d Cir. 2001). While it is undisputed that Nackel's employment agreement contains a choice-of-law clause providing that the agreement shall be construed in accordance with New York law, the parties' contract does not automatically settle the choice-of-law question. For although, "New York courts generally defer to the choice of law made by the parties to a contract ... New York law allows a court to disregard the parties' choice when 'the most significant contacts' with the matter in dispute are in another state." *Cargill, Inc. v. Charles Kowsky Res., Inc.,* 949 F.2d 51, 55 (2d Cir.1991); *see also Hartford Fire Ins. Co. v. Orient Overseas Containers Lines,* 230 F.3d 549, 556 (2d Cir.2000) ("New York law is clear [that] in cases involving a contract with an express choice-of-law provision ... a court is to apply the law selected in the contract *as long as* the state selected has sufficient contacts with the transaction.") (emphasis added).

While the choice of New York law would be reasonable, and hence enforceable, if Cap Gemini's "principal place of business" were in New York, creating significant contacts to the state, *see, e.g., Woodling v. Garrett Corp.*, 813 F.2d 543, 552 (2d Cir.1987); *Finucane v. Interior Constr. Corp.*, 264 A.D.2d 618, 695 N.Y.S.2d 322, 325 (1st Dep't 1999) (mem.), the record in this case merely reveals that Cap Gemini's "headquarters" are in New York. Without any further explanation of the extent of Cap Gemini's presence in New York, and as the District Court made no findings as to whether a real conflict exists between New York and California law, we must vacate the District Court's order and remand for further findings on the choice-of-law question.[4]

### Conclusion

It may well be true, as the District Court found, that "the plain language of the arbitration clause at issue ... evidences a clear and unmistakable intent to refer the issue of arbitrability to the arbitrators." However, before proceeding to determine the scope of the arbitration agreement, the court must first confirm that the agreement is valid and enforceable. Because this question may rest on a choice-of-law analysis that has not been fully developed to permit adequate review, we VACATE the order of the District Court and REMAND for additional findings on the choice-of-law question, following the procedure set forth in *United States v. Jacobson*, 15 F.3d 19, 21–22 (2d Cir.1994). The mandate shall issue forthwith, and any party seeking appellate review of the decision on remand shall so inform the Clerk of Court within 30 days of that decision. Jurisdiction will then automatically be restored to this court without the need for an additional notice of appeal, and the matter will be referred to this panel for disposition.

---

4. The parties have not adequately addressed the substantive differences between New York and California law. If the District Court concludes after completing the choice-of-law analysis that California law applies, it will be necessary to consider whether the arbitration provision is enforceable under California law.