McGuire, J.,
concurs in a separate memorandum as follows: The parties agree that their arbitration agreement is subject to the Federal Arbitration Act (FAA) (9 USC § 10 [a]). The agreement provides in relevant part that “the parties shall each retain the rights to appeal errors of law to a court of law having jurisdiction in the matters addressed herein.” In Hall St. Assoc., L.L.C. v Mattel, Inc. (552 US 576, 128 S Ct 1396 [2008]), an arbitration agreement contained a similar provision, purporting to authorize judicial review of any erroneous conclusions of law by the arbitrator; and the Supreme Court held that the grounds for judicial review specified in the FAA cannot be supplemented by contract. Thus, Hall St. Assoc, renders unenforceable the provision in the arbitration agreement providing for judicial review of errors of law by the arbitrator. The principal issue on this appeal is whether a court or the arbitration panel should decide if the arbitration agreement is invalid because of the unenforceability of the provision providing for judicial review of errors of law.
To resolve that issue, the principles set forth in First Options of Chicago, Inc. v Kaplan (514 US 938 [1995]) should be reviewed. As the Supreme Court reiterated, “[w]hen deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally . . . should apply ordinary state-law principles that govern the formation of contracts” (id. at 944). Here, as in First Options, “[t]he relevant state law . . . would require the court to see whether the parties objectively revealed an intent to submit the arbitrability issue to arbitration” (id.). The Court stressed, however, that “[c]ourts should not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so” (id. [brackets and internal quotation marks omitted]). As the Court explained, “[i]n this manner the law treats silence or ambiguity about the question ‘who (primarily) should decide arbitrability’ differently from the way it treats silence or ambiguity about the question ‘whether a particular merits-related dispute is arbitrable because it is within the scope of a valid arbitration agreement’ ” (id. at 944-945).
Although a presumption in favor of arbitrability applies when the latter question is at issue, the Court provided two reasons supporting a presumption against arbitration when the former question is at issue. First, because the question of “ ‘who (primarily) should decide arbitrability’ ... is rather arcane,” “[a] party often might not focus upon that question or upon the sig *498 nificance of having arbitrators decide the scope of their own powers” (id. at 945 [internal quotation marks omitted]). Second, “given the principle that a party can be forced to arbitrate only those issues it specifically has agreed to submit to arbitration,” courts are hesitant “to interpret silence or ambiguity on the ‘who should decide arbitrability’ point as giving the arbitrators that power” (id.). After all, so to interpret silence or ambiguity “might too often force unwilling parties to arbitrate a matter they reasonably would have thought a judge, not an arbitrator, would decide” (id.).
In this case, there is “clear and unmistakable” evidence that the parties’ dispute about the validity of the arbitration agreement in light of the Supreme Court’s decision in Hall St. Assoc. is one they agreed to arbitrate. Putting aside the breadth of their agreement to arbitrate “[a]ll disputes and differences arising under or in connection with this Insurance” (even though the current dispute about the validity of the arbitration agreement is one that “arises” both “under” and “in connection with” the contingent cost insurance [CCI] contracts of which the arbitration agreement is a part), the parties also agreed in each of the four CCI contracts that all such disputes and differences would be referred to arbitration under the rules of the American Arbitration Association (AAA). Article 15.1 of the AAA International Arbitration Rules specifies that “[t]he tribunal shall have the power to rule on its own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement.”
Appellants, commercially sophisticated entities, do not claim they were unaware of the content of the AAA rules to which they expressly agreed to be bound. Thus, far from being silent or ambiguous about the question of who should decide arbitrability, the arbitration agreement provides objective and unequivocal proof that the parties did “focus upon that question [and] upon the significance of having arbitrators decide the scope of their own powers” (First Options, 514 US at 945). Indeed, the Second Circuit has held that “when . . . parties explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties’ intent to delegate such issues to an arbitrator” (Contec Corp. v Remote Solution, Co., Ltd., 398 F3d 205, 208 [2005]). Thus, in Contec, where the arbitration agreement incorporated a rule identical in relevant part to article 15.1, the Second Circuit rejected the claim of Remote Solution, a signatory to the arbitration agreement, that it could not be compelled to arbitrate with a nonsignatory, i.e., the corporate *499 successor to the agreement’s other signatory. Agreeing with the “virtually indistinguishable” (id. at 210) decision of the First Circuit in Apollo Computer, Inc. v Berg (886 F2d 469 [1989]), the Second Circuit concluded that because Remote Solution “agreed to be bound by provisions that clearly and unmistakably allow the arbitrator to determine her own jurisdiction over an agreement to arbitrate whose continued existence and validity is being questioned, it is the province of the arbitrator to decide whether a valid arbitration agreement exists” (Contec, 398 F3d at 211 [internal quotation marks omitted]).[1]
Relying principally on Cap Gemini Ernst & Young, U.S., L.L.C. v Nackel (346 F3d 360 [2003]) and Nichols v Washington Mut. Bank (2007 WL 4198252, 2007 US Dist LEXIS 85936 [ED NY 2007]), appellants advance a formidable argument in support of their position that judicial resolution of their challenge to the validity of the arbitration agreement is necessary. In Cap Gemini, the employment agreement between the parties contained an arbitration clause that broadly provided for arbitration of, inter alia, “[a]ny dispute, controversy or claim . . . arising out of [the] employment,” and incorporated the “commercial arbitration rules then obtaining of the [AAA]” (346 F3d at 364 n 3). It appears (id. at 364 n 3, 366), and we are informed by appellants, that those rules included a provision identical in relevant part to article 15.1. The employee argued he could not be compelled to arbitrate his claims against Cap Gemini because the arbitration agreement was invalid as unconscionable under California law (id. at 364). Although the Second Circuit remanded to the District Court to determine, inter alia, whether New York or California law governed the validity of the arbitration agreement, the panel held that “before proceeding to determine the scope of the arbitration agreement, the court must first confirm that the agreement is valid and enforceable” (id. at 366; see also id. at 365 [“(i)t is clear that questions of contractual validity relating to the unconscionability of the underlying arbitration agreement must be resolved *500 first, as a matter of state law, before compelling arbitration pursuant to the (Federal Arbitration Act [9 USC § 16])”]).
In Nichols, the arbitration agreement was similarly broad—it provided for arbitration of “ ‘[a]ny controversy or claim arising out of or relating to th[e] contract, or the breach thereof’ ” (2007 WL 4198252, *6, 2007 US Dist LEXIS 85936, *20)—and it also incorporated an AAA rule identical in relevant part to article 15.1 (2007 WL 4198252, *7, 2007 US Dist LEXIS 85936, *22). Nichols, the party resisting arbitration, challenged the validity of the arbitration agreement on the ground that it was unconscionable under New York law (and on two other grounds that are noted below), and the District Court agreed that judicial resolution of her challenges was necessary. The court recognized that in Contec the Second Circuit “expressly found that an arbitration clause incorporating [a provision authorizing the arbitrator to rule on objections with respect to the existence, scope or validity of the arbitration agreement] sufficed to render the question of arbitrability itself arbitrable” (2007 WL 4198252, *7, 2007 US Dist LEXIS 85936, *22). Nonetheless, citing Cap Gemini, the court broadly stated that when a party challenges “the existence or validity of the arbitration clause itself, courts must determine whether the arbitration clause itself exists, and whether it is valid” (2007 WL 4198252, *7, 2007 US Dist LEXIS 85936, *22-23).
Cap Gemini does not purport to hold that all issues concerning the validity of an arbitration agreement are invariably for the courts. To the contrary, the Second Circuit limited its holding to validity questions “relating to the unconscionability of the underlying arbitration agreement” (346 F3d at 365). Moreover, a sweeping rule that all questions relating to the validity of an arbitration agreement must be resolved by the courts would entail a startling proposition: parties to an arbitration agreement lack the power (freedom of contract) to agree that any issues relating to the validity of the agreement should be submitted to arbitration. That this proposition is contrary to settled law is apparent when one considers a hypothetical arbitration agreement that both envisions the possibility the Supreme Court might rule as it did in Hall St. Assoc, and expressly provides that in the event of such a holding the question of the validity of the arbitration agreement would be submitted to arbitration. Such an agreement surely would be enforceable, given that “it is settled that the validity of an arbitration agreement is to be determined by the law applicable to contracts generally” (Sablosky v Gordon Co., 73 NY2d 133, 137 [1989]), public policy strongly favors arbitration (Smith Barney, 91 NY2d at *501 49) and “New York courts interfere as little as possible with the freedom of consenting parties to submit disputes to arbitration” (id. at 49-50 [internal quotation marks omitted]).
In light of the holding in Hall St. Assoc., the conclusion that the issue of the validity of the arbitration agreement is one the parties agreed to arbitrate is not as indisputable in this case as it is in the hypothetical case. But it nonetheless is supported by clear and unmistakable evidence (Contec, 398 F3d at 208) and should be enforced. The effect of the agreement to arbitrate under the rules of the AAA was to adopt and incorporate article 15.1 into each of the CCI contracts (Matter of Level Export Corp. [Wolz, Aiken & Co.], 305 NY 82, 86 [1953]). Under settled principles of contract law, the contract language stating that disputes about the validity of the arbitration agreement are to be arbitrated cannot be disregarded (Bretton v Mutual of Omaha Ins. Co., 110 AD2d 46, 49 [1985], affd for reasons stated 66 NY2d 1020 [1985] [stating that courts should not disregard provisions of contract that are clear and unequivocal]). Rather, as appellants do not even claim that they failed to read article 15.1, they are conclusively bound by its terms (Arnav Indus., Inc. Retirement Trust v Brown, Raysman, Millstein, Felder & Steiner, 96 NY2d 300, 304 [2001] [“a party who signs a document is conclusively bound by its terms absent a valid excuse for having failed to read it”]).
On the other hand, not all questions relating to the validity of an arbitration agreement are for the arbitrator when an arbitration agreement expressly provides for arbitration of questions relating to its validity. Rather, judicial resolution of some such questions is appropriate. If, for example, a signatory to the agreement did not knowingly agree to arbitration at all (or to arbitration of disputes about its validity) as a result of fraudulent conduct by the other signatory, the assent necessary to enforcement of a contract would be lacking (Joseph Martin, Jr., Delicatessen v Schumacher, 52 NY2d 105, 109 [1981] [“before one may secure redress in our courts because another has failed to honor a promise, it must appear that the promisee assented to the obligation in question”]).[2] A claim that an arbitration agreement is unconscionable similarly calls into question the *502 fundamental matter of its enforceability (Matter of State of New York v Avco Fin. Serv. of N.Y., 50 NY2d 383, 390 [1980] [noting that claim of unconscionability of contract clause encompasses “deception ... as to the clause’s content or existence, or the presence of language difficulties or illiteracy affecting its execution, or any other reasons that would have made it unlikely that consent was freely and knowingly given”] [emphasis added and citations omitted]; see also King v Fox, 7 NY3d 181, 191 [2006]).
To be sure, appellants contend that the arbitration agreement is entirely unenforceable because they would not have agreed to arbitration if they had known, as Hall St. Assoc, subsequently held, that the provision authorizing appeals of errors of law to a court of law was invalid. That contention, however, is inconsistent with the parties’ agreement to arbitrate questions relating to the validity of the agreement. The parties did not agree to arbitrate only meritless challenges to the validity of the arbitration agreement. Rather, they clearly contemplated the possibility that the arbitrators might determine to invalidate the arbitration agreement. It makes no sense to suppose that the parties contemplated that such a determination itself would be invalid.
It may be that appellants would not have agreed to arbitration if they had known the parties could not obtain judicial review of errors of law. And it also may be that for this reason they cannot be compelled to arbitrate any substantive disputes with respondent. But it does not follow that the specific agreement to arbitrate disputes over the validity of the arbitration agreement is unenforceable. To the contrary, that agreement should be regarded as a distinct agreement that is enforceable unless a specific challenge to its validity is raised. Because appellants do not contend that they did not freely and knowingly consent to arbitrate questions relating to the validity of the arbitration agreement, their challenge to the validity of the agreement is one for the arbitrators to determine.
Appellants’ additional arguments in support of a stay of the arbitration proceeding are similarly not subject to judicial review. Although respondent apparently commenced the arbitration prior to paying the claims in violation of the contract’s “pay first” provision,* *[3] the effect of such a violation raises a *503 question regarding arbitrability that, as discussed above, must be decided by the arbitrators. [See 2008 NY Slip Op 32626(U).]

. Similarly, in Matter of Smith Barney Shearson v Sacharow (91 NY2d 39 [1997]) the arbitration agreement incorporated the rules of the NASD Code, including a provision that arbitrators are “ ‘empowered to interpret and determine the applicability of all provisions under this Code and to take appropriate action to obtain compliance with any ruling by the arbitrator (s)’ ” (id. at 46-47). Although that provision is surely less unequivocal on the question of who should decide arbitrability than the AAA rule at issue in this case and in Contec, the Court of Appeals noted with apparent approval that “[c]ourts have interpreted the incorporation of this provision in the agreements of parties as a clear and unmistakable expression of their intent to leave the question of arbitrability to the arbitrators” (id. at 47 [internal quotation marks omitted]).

. Thus, in Nichols, Nichols also claimed that she was unaware of the arbitration clause in the contract and the District Court reviewed (and rejected) that claim (2007 WL 4198252, *7, 2007 US Dist LEXIS 85936, *24-25). The District Court also reviewed and rejected Nichols’ claim that the arbitration clause was invalid under General Business Law § 399-c, which prohibits mandatory arbitration clauses in contracts for the sale or purchase of consumer goods (2007 WL 4198252, *9, 2007 US Dist LEXIS 85936, *29-30). We need not determine whether we agree that such a challenge to an arbitra *502 tion agreement is one that courts must resolve when the parties agree to arbitrate questions relating to its validity.

. The contract provided that indemnification from appellant Peachtree is respondent Lloyd’s “sole and exclusive remedy” and that “under no circum *503 stances . . . shall [Lloyd’s] be entitled to submit any dispute” regarding its obligation to pay a claim to arbitration “prior to payment of such claim.”