**TGG ULTIMATE HOLDINGS, INC. et al., Plaintiffs,**

v.

**Joseph HOLLETT, et al., Defendants.**

**16–CV–6289 (VM)**

United States District Court, S.D. New York.

Signed 12/09/2016

Filed 12/12/2016

Jeffrey Alan Cohen, Flaster/Greenberg P.C., Cherry Hill, NJ, for Plaintiffs.

Kevin F. Murphy, Garson, Segal, Steinmetz, Fladgate LLP, New York, NY, for Defendants.

## DECISION AND ORDER

VICTOR MARRERO, United States District Judge.

Plaintiffs TGG Ultimate Holdings, Inc., TGG Holdings, Inc., TGG Sub Inc., and The Gordian Group, Inc. (collectively, "TGG") commenced this action against Defendants Joseph Hollett ("Hollett"), John Ledezma ("Ledezma"), Laura Romero ("Romero"), and Martin Garcia ("Garcia") (collectively, "Defendants"), asserting claims of breach of contract and breach of the covenant of good faith and fair dealing. ("Complaint," Dkt. No. 1.) TGG's Complaint was filed more than one month after Defendants commenced their own action against TGG in California based essentially on the same facts (the "California Action"). Since TGG's filing of the Complaint on August 9, 2016, the parties have, pursuant to the Court's Individual Practices, exchanged pre-motion letters regarding the validity of the two litigations. Defendants, alleging that California law applies, rather than New York law, contend that this litigation should be dismissed in favor of the California Action. The Court now construes the correspondence described above as a motion by Defendants to dismiss the Complaint ("Motion"). For the reasons discussed below, Defendants' Motion is DENIED.

## I. BACKGROUND

### A. Facts and Procedural History

TGG Ultimate Holdings, Inc., TGG Holdings, Inc., and TGG Sub Inc. are job

order contracting (JOC) companies incorporated in Delaware with their principal place of business in South Carolina. The Gordian Group, Inc., another JOC company, is incorporated in Georgia, with its principal place of business also in South Carolina. TGG conducts operations in the Southwestern United States, including in California. (See Dkt. No. 1, at 4.) TGG maintains no operations in New York, but it has one major client in New York—the New York Department of Education—and holds quarterly meetings with that client in New York City.

Defendants are residents of California and former employees of TGG in California. Hollett left his employment with TGG in February 2013; Ledezma left his employment in November 2015; and both Romero and Garcia left on June 30, 2016. (Dkt. No. 1, at 8, 12, 16, 20.)

TGG filed this action to enjoin Defendants from violating their post-employment obligations, arising from non-compete and non-solicitation agreements they signed in 2012 (the "2012 Non–Compete Agreements"). TGG alleges that: (1) Defendants downloaded TGG's proprietary information, including client action plans and financials; (2) Hollett formed JAMB Services, Inc., a JOC company, to compete with TGG, and solicited the other Defendants and employees of TGG to work for JAMB; (3) Garcia and Romero downloaded proprietary company information from TGG before terminating their employment, so they could share the information with the other Defendants; and (4) these actions jeopardized TGG's business relationships, in breach of contract and in breach of Defendants' duty of good faith and fair dealing. (Dkt. No. 1, at 20–24.) TGG sought preliminary and permanent injunc-

tive relief, as well as compensatory, statutory, punitive, and treble damages. (See id. at 28.)

On June 29, 2016, prior to the filing of the present lawsuit and one day before Romero and Garcia terminated their employment with TGG, Defendants filed the California Action in California state court, alleging that the 2012 Non–Compete Agreements violated California Business and Professions Code Sections 1660 and 17200, and California public policy disfavoring restrictive covenants. Defendants removed the California Action to the United States District Court for the Central District of California. Their complaint alleged that the 2012 Non–Compete Agreements violated California Business and Professions Code Sections 1660 and 17200, and California policy disfavoring restrictive covenants. (See Dkt. No. 6, Exhibit G.)[1] Defendants' original complaint in the California Action did not incorporate or attach the 2012 Non–Compete Agreements with the New York choice-of-law and forum-selection provisions. TGG claims that the timing of Defendants' filing of the California Action indicates their intent to violate the 2012 Non–Compete Agreements.

The 2012 Non–Compete Agreements contain choice-of-law and forum selection provisions agreeing to jurisdiction in New York state or federal courts, and to the application of New York law:

> (c) <u>Governing Law</u>. This agreement will be governed by and construed in accordance with the substantive and procedural laws of the State of New York (without giving effect to any choice of law or conflict of law rules or provisions) applicable to agreements made and to be

1. Unless otherwise noted, all references to "Exhibit" refer to the Exhibits to the Certification by Jeffrey A. Cohen. (See Dkt. No. 6.)

performed entirely within such state. . . .

(e) Submission to Jurisdiction; Consent to Service of Process. The parties hereto hereby irrevocably submit to the exclusive jurisdiction of any federal or state court located within the Borough of Manhattan in the city and state of New York over any dispute arising out of or relating to this Agreement or any of the transactions contemplated hereby and each party hereby irrevocably agrees that all claims in respect of such dispute or any suit, action proceeding related thereto may be heard and determined in such courts.

Dkt. No. 6, Exhibit A at 5–6; Exhibits B, C, D, at 5.

On August 9, 2016, TGG filed the instant Complaint in this Court and moved for a preliminary injunction and temporary restraining order prohibiting Defendants from competing with TGG and engaging in trade secret misappropriation. (See "Preliminary Injunction Motion," Dkt. No. 6.) Defendants opposed TGG's Motion for Preliminary Injunction, arguing that (1) California law should apply in determining whether to give effect to the forum selection clause in each of Defendants' contracts with TGG, and under such circumstances the case should be dismissed in favor of the California court; (2) the most significant interests in the case are in California, not New York, and therefore the choice-of-law provisions should not be enforced; (3) because the California Action was filed before the New York case, the competing interests weighed in favor of California jurisdiction; and (4) because there was no attempt by Defendants to forum shop, the first-to-file rule would favor California jurisdiction. (Dkt. No. 7, at 15–16.) Defendants also stated their intention to file a motion to dismiss.

In response, TGG argued that the Non–Compete Agreements' choice-of-law and forum selection provisions determine the application of New York law and New York forum, and therefore the first-to-file argument is foreclosed. (See Dkt. No. 11, at 1.) The Court held a hearing on the Motion for Preliminary Injunction on August 17, 2016. (See Dkt. Minute Entry dated August 17, 2016.)

By letter dated August 24, 2016, TGG supplemented its Motion for Preliminary Injunction, arguing that Defendants filed the California Action in bad faith to escape New York jurisdiction, and that the Non–Compete Agreements are valid under New York law. (See "August 24 Letter," Dkt. No. 12.) The same day, Defendants responded, disputing TGG's claim of bad faith and citing New York precedent unfriendly to restrictive covenants. (See id.) The Court denied TGG's Motion for Preliminary Injunction and a Temporary Restraining Order on August 29, 2016. (See Dkt. No. 14.)

By letter dated September 6, 2016, Defendants sought leave from the Court to file a motion to dismiss the Complaint on substantially the same grounds as their opposition to TGG's Motion for Preliminary Injunction and Temporary Restraining Order. (See "September 6 Letter," Dkt. No. 18.) Defendants challenged the choice-of-law and forum selection provisions in the 2012 Non–Compete Agreements, arguing that both TGG and Defendants had minimal contacts with New York. (See id.)

By letter dated October 10, 2016, Defendants alerted the Court that they had amended their complaint in the California Action to include the 2012 Non–Compete Agreements. (See "October 10 Letter," Dkt. No. 25.) TGG responded on October 17, 2016, alleging that Defendants' October 10 Letter violated the Court's Individual

Practices. TGG also argued that Defendants' amendment to the original complaint in the California Action was made in order to avoid New York jurisdiction by making it appear as though Defendants intended to pursue the 2012 Non–Compete Agreements from the beginning. (See id.)

## II. LEGAL STANDARD

■ It is well established that "[p]arties can consent to personal jurisdiction through forum-selection clauses in contractual agreements." D.H. Blair & Co., Inc. v. Gottdiener, 462 F.3d 95, 103 (2d. Cir. 2006), see also Laufer Group Intern. v. Tamarack Industries, LLC, 599 F.Supp.2d 528, 530 (S.D.N.Y. 2009). Therefore, a finding that a forum selection clause is valid would permit the court to exercise personal jurisdiction over the parties. See D.H. Blair & Co., 462 F.3d at 103 (finding parties' forum selection clause demonstrated consent to New York jurisdiction, and therefore jurisdiction was properly exercised.)

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). The court's task in ruling on a motion to dismiss is to "assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." In re Initial Pub. Offering Sec. Litig., 383 F.Supp.2d 566, 574 (S.D.N.Y. 2005). The court must accept all well-pleaded factual allegations in the Complaint as true, and draw all reasonable inferences in the plaintiff's favor. See Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002).

■ Ordinarily, a district court has equitable discretion to dismiss or stay a suit that is duplicative of another federal action "as part of its general power to administer its docket." Curtis v. Citibank, N.A., 226 F.3d 133, 138 (2d Cir. 2000). However, when the parties have agreed to choice-of-law and forum selection provisions, the court must apply them if valid. See S. Leo Harmonay, Inc. v. Binks Mfg. Co., 597 F.Supp. 1014, 1025 (S.D.N.Y. 1984); see also Phillips v. Audio Active Ltd., 494 F.3d 378, 383–384 (2d Cir. 2007). A forum selection provision, if valid, is presumably enforceable and is determinative of the court where the litigation will be held. See Phillips, 494 F.3d at 383–384. A choice-of-law provision, however, does not determine where the litigation will proceed. See S. Leo Harmonay, Inc., 597 F.Supp. at 1025 (presenting a test where a different state's law may apply).

## III. DISCUSSION

### A. THE NEW YORK CHOICE OF LAW PROVISION

■ In deciding whether the parties' choice-of-law provision is enforceable, New York follows the "substantial relationship" approach provided in the Restatement (Second) of Conflict of Laws. See S. Leo Harmonay, Inc., 597 F.Supp. at 1025 (S.D.N.Y. 1984), aff'd 762 F.2d 990 (2d Cir. 1985). Under the Restatement:

"(2) the law of the state chosen by the parties to govern their contractual rights and duties will be applied ... unless either

(a) the chosen state has no substantial relationship to the parties ... or

(b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state."

Restatement (Second) of Conflict of Laws Section 187 (Am. Law Inst. 1971).

■■■ The parties' choice-of-law provision will control as long as the selected state has sufficient contacts with the transaction. See Hartford Fire Ins. Co. v. Orient Overseas Containers Lines (UK) Ltd., 230 F.3d 549, 556 (2d Cir. 2000). But "New York law allows a court to disregard the parties' choice when 'the most significant contacts' with the matter in dispute are in another state." Cap Gemini Ernst & Young, U.S., L.L.C. v. Nackel, 346 F.3d 360, 365 (2d Cir. 2003); see also Business Incentives Co., Inc. v. Sony Corp. of America, 397 F.Supp. 63, 67 (S.D.N.Y. 1975). If New York does have sufficient contacts, the court will still apply the law of another state if (1) that state has a materially greater interest in the litigation than New York, and (2) application of New York law would be contrary to a fundamental policy of that state. See S. Leo Harmonay, Inc., 597 F.Supp. at 1025.

"Sufficient contacts" generally requires more than just one contact. In Business Incentives Co., the only contacts with New York were the defendant's incorporation in New York and the original contract's provision for performance in New York. See 397 F.Supp. at 67. However, plaintiff was a New Jersey corporation, performance of the contract was exclusively in New Jersey, and New Jersey's strong, pro-consumer public policy was in conflict with New York policy. The court found that, despite the party's New York choice-of-law provision, New Jersey law applied. See id. at 67.

Similarly, in S. Leo Harmonay, Inc., a breach of contract case between defendant contractor and plaintiff subcontractor, the court invalidated the Illinois choice-of-law provision in the parties' contract in favor of New York law. See 597 F.Supp. at 1025 (S.D.N.Y. 1984). The defendant's principal place of business in Illinois was the only contact to the state either party had. Meanwhile, the work detailed in the contract was performed in New York, all negotiations were held in New York, the prime contract between the parties was governed by the law of New York, and the plaintiff was both incorporated in New York and had its principal place of business in New York. Therefore, New York law governed. See id., aff'd, 762 F.2d 990 (2d Cir. 1985).

■■■ Here, the facts alleged in the Complaint demonstrate that the choice-of-law provisions are invalid, and therefore California law applies.[2] TGG has failed to demonstrate the existence of any contacts of this action with New York other than the choice-of-law provision itself. Neither TGG nor its subsidiaries are incorporated, nor operate principally, in New York. (See Dkt. No. 1, at 2–3.) None of the contracts were negotiated in New York and none specified New York as a place of performance or of where subject matter jurisdiction was located. None of the Defendants are residents of or domiciled in New York. Rather, all Defendants are residents and citizens of California. (See Dkt. No. 1, at 2–3.) All Defendants "worked in their various capacities under the contracts as California employees, working solely in California. The contracts were presented or negotiated in California, not New York."

---

**2.** The parties' choice-of-law provision states that the agreement will be construed under New York's substantive and procedural laws, "without giving effect to any choice-of-law or conflict of law rules or provisions." See Dkt. No. 6, Exhibits A, B, C, D, at 5. The language of the agreement does not foreclose this Court's review of the choice-of-law provisions. See Cap Gemini Ernst & Young, U.S., L.L.C. v. Nackel, 346 F.3d 360, 365 (2d Cir. 2003); see also Estee Lauder Companies Inc. v. Batra, 430 F.Supp.2d 158, 170 (S.D.N.Y. 2006) (analyzing choice-of-law provisions despite similar language in contract).

(See Dkt. No. 18, at 2.) TGG's New York operations are limited to quarterly meetings and work for the New York Department of Education; the record does not indicate Defendants ever involved themselves with this TGG client during their time at TGG. (See Aug. 17, 2016 Hr'g Tr. at 18.) Because the record does not indicate any significant contacts of the parties' transaction with New York, the Non–Compete Agreements' choice-of-law provision is invalid. Therefore, the Court will apply California law when analyzing the contracts at issue.

■■■ Notwithstanding the lack of significant contact to New York, the Court is also persuaded that California has a materially greater interest in the litigation than New York and that application of New York law would contradict a significant policy of California. See S. Leo Harmonay, Inc., 597 F.Supp. at 1025. The second prong of the Restatement's test therefore also mandates application of California law.

■■■ California law fundamentally protects employee interests against non-compete agreements. Under California law, "every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void." Cal. Bus. & Prof. Code Section 16600 (1941) ("Section 16600"). "Section 16600 has specifically been held to invalidate employment contracts which prohibit an employee from working for a competitor when employment has terminated, unless necessary to protect the employer's trade secrets." SG Cowen Securities Corp. v. Messih, No. 00 Civ. 3228, 2000 WL 633434 at *4 (S.D.N.Y. 2000) (citing Metro Traffic Control, Inc. v. Shadow Traffic Network, 22 Cal.App.4th 853, 860, 27 Cal.Rptr.2d 573 (1994)). In New York, by contrast, non-compete covenants by employees are subject to an "overriding limitation of reasonableness." See Ticor Title Ins. Co. v. Cohen, 173 F.3d 63, 70 (2d Cir. 1999) (quoting Karpinski v. Ingrasci, 28 N.Y.2d 45, 49, 320 N.Y.S.2d 1, 268 N.E.2d 751 (1971)); see also Production Resource Group, L.L.C. v. Oberman, No. 03 Civ. 5366, 2003 WL 22350939 at *9 (S.D.N.Y. 2003). (comparing Ticor with Section 16600 to find that California's significant policy is in conflict with New York law).

Whether or not TGG's trade secrets or proprietary information are being misappropriated by Defendants is a matter for the court to determine on the merits. Regardless, the trade secrets exception to Section 16600 does not account for the prospect that, if the Court applied New York law and determined trade secrets were not involved, New York law may still require enforcement of the 2012 Non–Compete Agreements. Meanwhile, California law would likely hold the agreements invalid. This constitutes a fundamental conflict in policy.

California thus has a materially greater interest in the litigation, and its fundamental public policy conflicts with application of New York law. The New York choice-of-law provision is improper under both the substantial relationship test and the significant state policy test. The Court will therefore apply California law to the 2012 Non–Compete Agreements.

## B. THE NEW YORK FORUM SELECTION CLAUSES

■■■ The Court is persuaded that, under California law, the forum selection clauses are valid. "No satisfying reason of public policy has been suggested why enforcement should be denied a forum selection clause appearing in a contract entered into freely and voluntarily by parties who have negotiated at arm's length." Nedlloyd Lines B.V. v. Superior Court, 3 Cal.4th 459, 464, 11 Cal.Rptr.2d 330, 834 P.2d 1148

(1992) (citing Smith, Valentino & Smith, Inc. v. Superior Court, 17 Cal.3d 491, 495–496, 131 Cal.Rptr. 374, 551 P.2d 1206 (1976)). In Smith, Valentino & Smith, Inc., the court recognized that, while parties traditionally could not deny a court its jurisdiction, the U.S. Supreme Court and the Third Circuit favored enforceability of forum selection clauses, and thus adopted the same rule. See 17 Cal.3d at 495, 131 Cal.Rptr. 374, 551 P.2d 1206. Therefore, this Court finds that the Non–Compete Agreements' forum selection clauses are valid under California law.

■■■ Even if California law did not apply to the forum selection clauses, the Court finds the clauses would be valid under the law of the Second Circuit. In the Second Circuit, a four-part test determines the interpretation and enforcement of forum selection clauses.

The first inquiry is whether the clause was reasonably communicated to the party resisting enforcement … The second step requires us to classify the clause as mandatory or permissive, i.e., to decide whether the parties are required to bring any dispute to the designated forum or simply permitted to do so … Part three asks whether the claims and parties involved in the suit are subject to the forum selection clause … The fourth, and final, step is to ascertain whether the resisting party has rebutted the presumption of enforceability by making a sufficiently strong showing that "enforcement would be unreasonable or unjust, or that the

clause was invalid for such reasons as fraud or overreaching."
Phillips v. Audio Active Ltd., 494 F.3d 378, 383–384 (2d Cir. 2007). If steps one through three are met, the clause is presumptively enforceable unless the challenging party can prove, in step four, that the presumption has been defeated. See id.

■■■ The Phillips test requires the Court to look to the parties' agreed-upon choice-of-law to interpret steps two and three. See 494 F.3d at 383–384. When any contractual ambiguities arise, the contract law of the state named in the choice-of-law provisions applies to resolve the ambiguities; otherwise, the Court may use its own rules. See Martinez v. Bloomberg LP, 740 F.3d 211, 217–18 (2d. Cir. 2014) (using English law to interpret part of contract that does not fall clearly into Step 3). Federal law applies to steps one and four. See id.; see also M/S Bremen v. Zapata Off–Shore Co., 407 U.S. 1, 15, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972) (creating the "unreasonable or unjust" test). Under this test, for the reasons outlined below, the forum selection provisions are valid.[3]

1. Reasonably Communicated

■■■ Determination of whether a forum selection clause is "reasonably communicated" depends on the actual physical presence of the clause. See Effron v. Sun Line Cruises, Inc., 67 F.3d 7, 9–10 (2d Cir. 1995) (finding that the forum selection clause on a ticket is similar enough to past tickets that have been enforceable). Here, the forum selection clause is clearly incor-

---

**3.** Defendants argue that California law should apply to the forum selection provisions, and that, if California law applies, the Court should dismiss or "transfer the matter to the first-filed court." (See Dkt. No. 7, at 15.) However, the cases cited by Defendants for the proposition that the first-to-file rule mandates dismissal in favor of the California Action are inapposite because they did not in-

volve contracts with forum selection clauses. See Meeropol v. Nizer, 505 F.2d 232, 235 (2d Cir. 1974); see also Citigroup Inc. v. City Holding Co., 97 F.Supp.2d 549, 555 (S.D.N.Y. 2000). Therefore, the forum selection provisions are presumably enforceable if they meet the test outlined in Phillips. See Phillips, 494 F.3d at 383–384.

porated as part of each Defendant's agreement with TGG. Each Defendant signed the agreement. The forum selections were therefore reasonably communicated.

### 2. Mandatory or Permissive

 Forum selection clauses are mandatory if their language "confers exclusive jurisdiction on the designated forum or incorporates obligatory venue language." Phillips, 494 F.3d at 386. The 2012 Non–Compete Agreements mandate that Defendants "irrevocably submit to the exclusive jurisdiction" of New York state or federal courts. (See Dkt. No. 6, Exhibit A at 6, Exhibit B—D at 5.) The clauses are therefore mandatory.

### 3. Whether the claims and parties involved in the suit are subject to the forum selection clause

 A contract's forum selection provisions will not be disregarded unless the contract evinces agreement by the parties that the claims the plaintiff has filed cannot be heard in that forum. See Phillips, 494 F.3d at 387. A broadly-worded forum selection clause is not limited solely "to claims for breach of the contract that contains it." Cfirstclass Corp. v. Silverjet PLC, 560 F.Supp.2d 324, 329 (S.D.N.Y. 2008) (citing Roby v. Corp. of Lloyd's, 996 F.2d 1353, 1361 (2d Cir. 1993)) (discussing a forum selection clause that reads, "arising out of, under or in connection with this Agreement or the transactions contemplated by this Agreement.")

 Here, the parties' entire dispute is governed by the forum selection clauses in the 2012 Non–Compete Agreements. All parties are named in the agreements, which provide that New York courts will hear "any dispute arising out of or related to this Agreement or any of the transactions contemplated hereby." (Dkt. No. 6, Exhibit A at 6.) TGG alleged (1) breach of

contract, (2) breach of good faith and fair dealing, (3) tortious interference with contractual relations, and (4) trade secrets misappropriation. (See Dkt. No. 1 at 23–26.) Counts 1 and 2 clearly arise out of the contract; they pertain to alleged violations of the 2012 Non–Compete Agreements themselves. While counts 3 and 4 may not directly arise out of the agreements, they are related to the agreements. As to count 3, TGG asserts that Defendants tortiously interfered with their relationships with clients by "engaging in competitive activities, soliciting/hiring The Gordian Groups' employees, and/or retaining and using The Gordian Group's trade secrets...." (Dkt. No. 1. at 25.) These allegedly harmful activities are explicitly covered by the 2012 Non–Compete Agreements, which state that Defendants may not "solicit the employment of any employee" of TGG nor "disclose or use at any time ... any confidential or proprietary information" of TGG. (Dkt. No. 1, at 5–7, 10–11, 13–15, 17–19.)

Likewise, count 4 is related to the "Confidential Information" subsections of the Agreements. All of TGG's claims, therefore, are subject to the forum selection clauses.

### 4. Enforcement of the forum selection clauses would be unreasonable or unjust

 Enforcing the Non–Compete Agreements' forum selection clauses would not be unreasonable or unjust. Because the forum selection clauses are "presumptively enforceable," the party resisting enforcement bears the burden of rebutting this presumption by making "a sufficiently strong showing" that either: "(1) its incorporation was the result of fraud or overreaching; (2) the law to be applied in the selected forum is fundamentally unfair; (3) enforcement contravenes a strong public

policy of the forum state; or (4) trial in the selected forum will be so difficult and inconvenient that the plaintiff effectively will be deprived of his day in court." Phillips, 494 F.3d at 392.

None of these considerations counsel against enforcement of the forum selection clauses at issue here. First, Defendants have not argued that the forum selection provisions were incorporated into the contracts fraudulently. Second, the law to be applied in this Court would not be fundamentally unfair to Defendants because the Court will apply California law, which Defendants desired in the first place. Third, the parties have not identified any strong public policy of New York that would be implicated by the enforcement of the forum selection clauses or the application of California law to the litigation. Fourth, while Defendants may face difficulties by litigating in New York instead of California, the distance between the parties and the selected forum is not enough of an inconvenience to render the forum selection provisions unenforceable. See Phillips, 494 F.3d at 393 (New York musician was compelled to litigate in England because, while more costly and difficult, it was not "impossible"). The forum selection clauses are thus enforceable.

## IV. ORDER

For the reasons stated above, it is hereby

**ORDERED** that the motion of defendants Joseph Hollett ("Hollett"), John Ledezma ("Ledezma"), Laura Romero ("Romero"), and Martin Garcia ("Garcia") (collectively "Defendants") to dismiss the Complaint (Dkt. No. 1) is **DENIED**.

**SO ORDERED.**